**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ESTATE OF SIVAN SHA'ARABANY, et al. | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. 1:25-cv-02490-RCL |
| v. | : | |
| | : | **Oral Argument Requested** |
| UNITED NATIONS RELIEF AND WORKS | : | |
| AGENCY FOR PALESTINE REFUGEES IN | : | |
| THE NEAR EAST (UNRWA), et al. | : | |
| | : | |
| Defendants. | : | |

………………………………………………………:

**PLAINTIFFS' PROPOSED SURREPLY TO DEFENDANT UNRWA'S REPLY
AND IN FURTHER SUPPORT OF
PLAINTIFFS' OPPOSITION TO UNRWA'S MOTION TO DISMISS**

Dated:  March 9, 2026                Respectfully Submitted,

HEIDEMAN NUDELMAN & KALIK P.C.

By:     */s/ Joseph H. Tipograph*
          Richard D. Heideman (No. 377462)
          Noel J. Nudelman (No. 449969)
          Tracy Reichman Kalik (No. 462055)
          Joseph H. Tipograph (No.997533)
          HEIDEMAN NUDELMAN & KALIK, PC
          5335 Wisconsin Avenue, NW; Suite 440
          Washington, DC  20015
          Telephone: 202.463.1818
          Facsimile: 202.463.2999

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. ii

    A.   The Executive Branch's Position that UNRWA is Not Entitled to Immunity Must Be Given "Great Weight". ....................................................................................................... 1

    B.   The Defendant's Newly Cited Drafting History Illustrates the CPIUN's Definition of "United Nations" Does Not Include UNRWA. ....................................................................... 3

    C.   ICJ Submissions Do Not Reflect Post-Ratification Understanding of the CPIUN Signatories. .......................................................................................................................... 7

    D.   Defendant's New Arguments Confirm That It Is Not Immune Under CPIUN or IOIA.. 9

CONCLUSION.................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams Challenge (UK) Ltd. v. Comm'r of Internal Revenue*,
  156 T.C. 16 (2021) ...................................................................................................... 9
*Al-Bihani v. Obama*, *
  619 F.3d 1 (D.C. Cir. 2010) ................................................................................ 2, 8, 9
*BG Grp. plc v. Republic of Arg.*,
  572 U.S. 25 (2014) ...................................................................................................... 3
*Brzak v. United Nations*,
  597 F.3d 107 (2d Cir. 2010) .................................................................................... 1, 5
*Diggs v. Richardson*,
  555 F.2d 848 (D.C. Cir. 1976) .................................................................................... 2
*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ................................................................................................. 3, 4
*El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*,
  525 U.S. 155 (1999) .................................................................................................... 1
*Flores v. S. Peru Copper Corp.*, *
  414 F.3d 233 (2d Cir. 2003) .................................................................................... 2, 4
*Frolova v. Union of Soviet Socialist Republics*,
  761 F.2d 370 (7th Cir.1985) ....................................................................................... 4
*Fuld v. Palestine Liberation Org.*, *
  145 S. Ct. 2090 (2025) ................................................................................................ 6
*Georges v. UN*,
  84 F. Supp. 3d 246 ...................................................................................................... 5
*Georges v. United Nations*,
  834 F.3d 88 (2d Cir. 2016) ...................................................................................... 1, 3
*Hunter v. United Nations*,
  6 Misc. 3d 1008(A), 800 N.Y.S.2d 347 (Sup. Ct. 2004) ............................................ 6
*Jam v. Int'l Fin. Corp.*, *
  586 U.S. 199 (2019) ................................................................................................. 1, 2
*Kolovrat v. Oregon*, *
  366 U.S. 187 (1961) .................................................................................................... 1
*Laventure v. UN,*
  279 F. Supp. 3d 394 (E.D.N.Y. 2017) ........................................................................ 5
*Lempert v. Rice*,
  956 F. Supp. 2d 17 (D.D.C. 2013) .............................................................................. 5
*Medellin v. Texas*, *
  552 U.S. 491 (2008) ............................................................................................. 1, 3, 8
*Morrison v. U.S. Dep't of Lab.*,
  713 F. Supp. 664 (S.D.N.Y. 1989) ............................................................................. 2

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................................................. 2
*Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries,*
   353 F.3d 916 (11th Cir. 2003) ......................................................................................... 6
*Roeder v. Islamic Republic of Iran*,
   742 F. Supp. 2d 1 (D.D.C. 2010) .................................................................................... 3
*Sadikoglu v. United Nations Dev. Programme,*
   2011 WL 4953994 (S.D.N.Y. Oct. 14, 2011) ................................................................. 5
*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) ......................................................................................................... 4
*Sullivan v. Finklestein*,
   496 U.S. 617 (1990) ......................................................................................................... 3
*Sumisoto Shoji Am., Inc. v. Avagliano*, *
   457 U.S. 176 (1982) ......................................................................................................... 1
*Turkiye Halk Bankasi A.S. v. United States*,
   598 U.S. 264 (2023) ......................................................................................................... 1
*United States v. Khatallah,*
   160 F.Supp.3d 144 (D.D.C. 2016) .................................................................................. 3
*Whitney v. Robertson*, *
   124 U.S. 190 (1888) ......................................................................................................... 6

**Statutes**

28 U.S.C. §§ 516, 519 ............................................................................................................. 2

**Other Authorities**

Annual Report of the Director, UN Doc. A/4213 (1959) ....................................................... 7
Convention on the Privileges and Immunities of the United Nations, Feb. 13, 1946,
   21 U.S.T. 1422 ................................................................................................................. 4
1954 ........................................................................................................................................ 7
Exec. Order No. 14,199 .......................................................................................................... 7
Memorandum Prepared in the Department of State for the White House (May 29, 1953), in III
   Foreign Relations of the United States 1952-1954: United Nations Affairs, (Ralph R. Goodwin
   & William Z. Slany eds., 1979) ....................................................................................... 7
Rep. of the Special Political Committee, UN Doc. A/4342 (1959) ........................................ 7
S. Exec. Rep. No. 91-17 (1970) ............................................................................................. 6
S.J. Res. 136, 80th Cong. (1947) ........................................................................................... 6
U.N. Conference on International Organization, Rep. of the Rapporteur of Committee IV/2,
   Doc. 933, Series IV/2/42 (2) (June 12, 1945). ................................................................ 4

COME NOW the Plaintiffs by and through counsel, and in further support of their Opposition to Defendant UNRWA's Motion to Dismiss, Plaintiffs submit this Sur-Reply in Response to the Defendants' Reply (D.E. 38, "UNRWA Reply" or "Reply').  In their Reply, UNRWA argues for the first time that Executive Branch's position that UNRWA is not entitled to immunity should be given "no deference." UNRWA Reply at 20-23.  However, this argument is contradicted by nearly all of the cases the Defendant cites in support of this point,[1] the cases upon which the Defendant principally relies[2] and the Defendant's own prior position.[3] In addition, the Defendant argues for the first time that UN Charter drafting history and the post-ratification understanding of signatories support its claim that the CPIUN's "plain text" extends the conferral of immunity to "the United Nations" to UNRWA as an entity subsequently created by the General Assembly.  UNRWA Reply at 5, 8-9.  Defendant should have, but did not, raise these load-bearing arguments in its initial brief, and to the extent these arguments are not waived, Plaintiffs are entitled to respond.

## A. The Executive Branch's Position that UNRWA is Not Entitled to Immunity Must Be Given "Great Weight".

The "great weight" to which Executive Branch treaty interpretation and application is afforded is well settled and is bound only by the plain language, not prior positions. *See supra* n.1-3; *Sumisoto Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184 n.10 (1982). The Department of Justice has broad discretion in litigation and the "change in administration brought about by the people

---

[1] *See Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 271, 280 (2023); *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 168 (1999); *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) (Executive Branch interpretations of treaties "is given great weight."); *Medellin v. Texas*, 552 U.S. 491, 513 (2008) (same).

[2] *See Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 212 (2019); *Brzak v. United Nations*, 597 F.3d 107, 111 (2d Cir. 2010) (Executive Branch interpretations of treaties "is given great weight."); *Georges v. United Nations*, 834 F.3d 88, 93 (2d Cir. 2016) (same); Statement of Interest of the United States at 8–9, *Lempert v. Rice*, No. 1:12-cv-01518 (D.D.C. May 3, 2013), ECF No. 17 (same); Statement of Interest of the United States at 4, *Sadikoglu v. UN Dev. Programme*, No. 1:11-cv-00294-PKC (S.D.N.Y. July 6, 2011), ECF No. 40 ("To the extent there could be any contrary reading of the General Convention's text, the Court should defer to the United States Executive Branch's interpretation.").

[3] Memo. in Support of Mot. to Dismiss at 11, *Estate of Siman Tov v. UNRWA,* 1:24-cv-04765-AT (Dec. 16, 2024) ECF No. 50 (Arguing "courts must give 'great weight' to the U.S. Government's views on the interpretation and application of the CPIUN.").

1

casting their votes is a perfectly reasonable basis" for its reversing the stance taken by its predecessor. *Morrison v. U.S. Dep't of Lab.*, 713 F. Supp. 664, 669 (S.D.N.Y. 1989) (setting forth the Department's broad authority in litigation under 28 U.S.C. §§ 516, 519); *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist J., concurring).

The new historical records the Defendant now introduces—statements of government officials and UN votes cast, all of which predate CPIUN ratification by the U.S. in 1970—do not bind the Executive Branch to recognize its immunity here. UNRWA Reply at 22-23. U.S. law specifically empowers the President to make such determinations on an evolving, case-by-case basis. *Jam*, 586 U.S. at 212.  That the U.S. voted for, sponsored or even controlled the text and passage of a certain UN resolution imports no legal authority to its contents. *See e.g., Al-Bihani v. Obama*, 619 F.3d 1, 6 (D.C. Cir. 2010) ("The varied process by which international law is made—through treaty, tribunal decision, and the constant churn of state practice and *opinio juris*—shares few, if any, of the qualities that give the traditional sources of interpretation their authority."); *Diggs v. Richardson*, 555 F.2d 848, 851–52 (D.C. Cir. 1976) (UNSC resolutions, over which the US is one of five countries with veto power and which are binding internationally, are not binding in or upon U.S. courts); *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 259 (2d Cir. 2003) ("The General Assembly . . .is not a law-making body," its resolutions "are merely aspirational and were never intended . . .[and] do not have the power to bind member States because the member States specifically denied the General Assembly that power after extensively considering the issue."). Thus, contrary to the new position that the Defendant now asserts, the Executive Branch's view that UNRWA is not immune, is highly probative, if not determinative that immunity should be denied. *See supra.* n.1.

The only circumstance that the Defendant identifies in which no deference is required is where the Government's views depart from the "plain text." *See BG Grp. plc v. Republic of Arg.*, 572 U.S. 25, 37 (2014). However, the "plain text" of CPIUN cannot possibly contradict the Executive Branch's credible test for determining what constitutes a "subsidiary organ"—as UNRWA now contends—because the "plain text" of the CPIUN explicitly refrains from extending UN immunity beyond the UN itself.[4] Nor does the "plain text" displace the IOIA and it's threshold requirements of U.S. participation in UNRWA (not the GA), as would be required to have the effect that UNRWA now contends. *See e.g. Roeder v. Islamic Republic of Iran*, 742 F. Supp. 2d 1, 4 (D.D.C. 2010), *aff'd*, 646 F.3d 56 (D.C. Cir. 2011); ECF No. 29 at 18 (participation is assessed at the organizational-level, not across all UN-affiliated organizations wholesale).

### B. The Defendant's Newly Cited Drafting History Illustrates the CPIUN's Definition of "United Nations" Does Not Include UNRWA.

Having not previously asserted drafting history, Defendant's Reply now introduces UN Charter drafting history, contending it supports that the CPIUN's "plain text" conferral of immunity to "the United Nations" extends to UNRWA as an entity that the General Assembly subsequently created. UNRWA Reply at 5.[5] That the Defendant seeks to introduce drafting history of a different treaty to establish what it argues is clear in the CPIUN's "plain text" is telling. Moreover, Defendant did not rebut—and therefore concedes—Plaintiffs' argument that beyond the CPIUN, all other international instruments—including the UN Charter and its drafting history—are not binding as or upon U.S. law.[6]

---

[4] *See* ECF No. 29 at 22-23, 25-27 (illustrating that the CPIUN immunizes the "United Nations" and "Representatives of Members to … subsidiary organs", but not to the "subsidiary organs themselves"); *Georges*, 834 F.3d at 93 ("*expressio unius est exclusio alterius*—express mention of one thing excludes all others"); *see also infra* at Sec. B.

[5] The drafting history is cited amidst post-enactment international instruments that the Defendant asserts as extending the definition. These "should not be taken seriously, not even in a footnote." *Sullivan v. Finklestein*, 496 U.S. 617, 632 (1990) (Scalia, J., concurring); *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008).

[6] *See* ECF No. 29 at 9, 24; *see also Medellín*, 552 U.S. at 505 (holding that non-self-executing treaties are not domestic law); *see also United States v. Khatallah,* 160 F.Supp.3d 144, 152 (D.D.C. 2016) ("Nothing in the [UN] Charter . . .

Moreover, contrary to Defendant's argument, the UN Charter's drafting history refutes—and does not support—its claim. The drafting history states that, under the UN Charter, the term "the Organization" encompasses principal and subsidiary organs established under Articles 7 and 22.[7] However, the CPIUN does not confer immunity to "the Organization," but only to the entity known as the "United Nations," not to other entities not specifically named, and certainly not to unborn entities. Convention on the Privileges and Immunities of the United Nations art. II, § 2, Feb. 13, 1946, 21 U.S.T. 1422. Nothing in the CPIUN, nor the UN Charter nor its newly cited drafting history, support the Defendant's argument that the "Organization" and "United Nations" are terms to be used interchangeably. The use of both terms should in fact be construed to reflect that they have "different meanings." *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended") The CPIUN preamble explains that it serves to delineate the extent to which its signatories will immunize "the Organization," so that the immunity is extended narrowly to only the "United Nations" and not the more broadly defined "Organization" does not support—but rather negates—any inference that Member States thought they were agreeing to immunize every entity which the General Assembly subsequently creates, as UNRWA now argues. *Id.*; *see also Heller*, 554 U.S. at 578 n.3 (recitals do not modify operative text). Defendant's assertion of drafting history is further undermined—not confirmed—by the cases it subsequently cites, which neither label the immunized affiliated entities as "subsidiary organs" nor cite to the UN Charter Articles 7 and 22 that Defendant now seeks to baselessly extend

---

demonstrates a determination by the President and the Senate that [the Charter] should have domestic legal effect."); *Flores*, 414 F.3d at 251 (2d Cir. 2003) ("[A]lthough the Charter of the United Nations has been ratified by the United States, it is not self-executing."); *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 373–74 (7th Cir.1985) ("We have found no case holding that the U.N. Charter is self-executing nor has plaintiff provided us with one. There are, however, quite a few decisions stating that the Charter is not self-executing.").

[7] U.N. Conference on International Organization, Rep. of the Rapporteur of Committee IV/2, at 2, Doc. 933, Series IV/2/42 (2) (June 12, 1945).

and expand into "plain text" of the CPIUN. *See Lempert v. Rice,* 956 F. Supp. 2d 17, 24 (D.D.C. 2013) (labeling UNDP a "subsidiary program"); *Laventure v. UN,* 279 F. Supp. 3d 394, 400 (E.D.N.Y. 2017) (calling MINUSTAH "a UN subsidiary"); *Georges v. UN,* 84 F. Supp. 3d 246, 248 ("subsidiary body"); *Sadikoglu v. United Nations Dev. Programme,* 2011 WL 4953994, at *3 (S.D.N.Y. Oct. 14, 2011) (labeling UNDP a "subsidiary program").

In each of these cases, the uniform treatment of the United Nations and its separate affiliated entities for immunity purposes was **both** pleaded or accepted as given by the plaintiff,[8] and supported by the United States,[9] neither of which is present here. Meanwhile, the Court in *Brzak* did not extend the UN's immunity to UNHCR, contrary to what the Defendant now contends. 597 F.3d at 110-112; UNRWA Reply at 6. In *Brzak*, the United Nations was the sole entity defendant, which the Court found immune under both the CPIUN and the IOIA and out of "great deference" to the Executive Branch. 597 F.3d at 112–13. The UNHCR immunity questions concerned the agency's *officials* and were resolved under the CPIUN's *diplomatic* immunity Articles, which are inapplicable here. *Brzak*, 597 F.3d at 113.

Indeed, in every case that UNRWA now cites where immunity of an operational entity is recognized, that immunity was only recognized after the court has made a *prima facie* determination that the IOIA was satisfied. *Lempert,* 956 F. Supp. 2d at 24 (UNDP); *Sadikoglu,*

---

[8] Compl. ¶ 5, *Lempert*, No. 1:12-cv-01518 (D.D.C. Sept. 13, 2012), ECF No. 1 (pleading the United Nations and UNDP together as an international organization under IOIA); Pl.'s Mem. Regarding Lack of Immunity at 29, *Sadikoglu*, No. 1:11-cv-00294-PKC (S.D.N.Y. Apr. 19, 2011), ECF No. 16 (describing UNDP as a "subsidiary body" of the UN); Compl. ¶ 2, *Georges*, No. 1:13-cv-07146-JPO (S.D.N.Y. Oct. 9, 2013), ECF No. 1 (alleging MINUSTAH was a subsidiary of the UN); Compl. ¶ 28, *Laventure*, No. 1:14-cv-01611-SLT-RLM (E.D.N.Y. Mar. 11, 2014), ECF No. 1 (same).

[9] Statement of Interest of the United States at 8–9, *Lempert v. Rice*, No. 1:12-cv-01518 (D.D.C. May 3, 2013), ECF No. 17 (asserting that "the UN, including its integral component the UNDP, enjoys absolute immunity"); Statement of Interest of the United States at 4, *Sadikoglu v. UN Dev. Programme*, No. 1:11-cv-00294-PKC (S.D.N.Y. July 6, 2011), ECF No. 40 (same); Statement of Interest of the United States at 4–5, *Georges v. United Nations*, No. 1:13-cv-07146-JPO (S.D.N.Y. Mar. 7, 2014), ECF No. 24 (stating "MINUSTAH, as a subsidiary organ of the UN, enjoys this same absolute immunity"); Statement of Interest of the United States at 3, *Laventure v. United Nations*, No. 1:14-cv-01611-SLT-RLM (E.D.N.Y. July 7, 2017), ECF No. 22 (describing MINUSTAH as a "component of the UN" entitled to immunity).

2011 WL 4953994, at *3 (UNDP); *Hunter v. United Nations*, 6 Misc. 3d 1008(A), 800 N.Y.S.2d 347 at *3 (Sup. Ct. 2004) (UNICEF). This reflects those courts' efforts to harmoniously read treaty and statute in accordance with the law and Congress's understanding that the CPIUN tracks the IOIA for UN affiliated entities, including in the very legislative history citation (which, of note, predated CPIUN ratification by 23 years) that the Defendant now introduces in its Reply to assert otherwise. *See e.g. Whitney v. Robertson*, 124 U.S. 190, 194 (1888); S. Exec. Rep. No. 91-17, at 5–6 (1970); S.J. Res. 136, 80th Cong. (1947) ("the two provisions shall wherever possible be treated as complementary to each other so that both provisions shall be applicable") (internal quotations omitted). The IOIA's participation requirement which Plaintiffs argued in their Opposition, was neither presented nor analyzed in these cases, but that does not reflect its inapplicability, as UNRWA now argues.[10]

Far from meeting its *heavy* burden of persuasion the Defendant barely refutes its failure to satisfy the IOIA[11] and, more importantly, at no point rebuts Plaintiffs' argument that Congress effectively legislated (and the Executive Branch confirmed) UNRWA's non-immune status under the IOIA through successive appropriations bills (and Executive Order), all of which are later-in-time to U.S. ratification of CPIUN. See ECF No. 29 at 16-20; *Fuld v. Palestine Liberation Org.*, 145 S. Ct. 2090, 2107 (2025) ("When the Executive and Congress have spoken with one voice [on matters of foreign affairs], their coordinate action is supported by the strongest of presumptions and the widest latitude of judicial interpretation, and the burden of persuasion would rest *heavily*

---

[10] Defendant instead mischaracterizes the Plaintiffs as arguing "that subsidiary organs may be stripped of immunity if they have operational functions." UNRWA Reply at 11. To the contrary, Plaintiffs illustrated that, unlike UNRWA, the precise set of agencies the Defendant identifies as the subject of "irreconcilable" caselaw—UNHCR, UNICEF, and UNDP—have all been structured to facilitate U.S. participation and indeed the U.S. participates in each. *See* ECF No. 29 at 11, 13-15, Appendix A (UNRWA), Appendix B (UNHCR), Appendix C (UNDP), Appendix D (UNICEF).

[11] After failing to argue participation in its opening brief, Defendant's entire rebuttal to Plaintiffs' U.S. participation argument is confined to footnotes 18 and 19 in its reply, which are unsupported by any relevant factual or legal citations, other than to invoke a hypothetical, which confronts different precedent that is not for this Court to resolve. *See e.g. Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries,* 353 F.3d 916, 922 n.9 (11th Cir. 2003)

upon any who might attack it") (internal quotations omitted); Exec. Order No. 14,199, 90 Fed. Reg. 9275 (Feb. 10, 2025). Moreover, the Defendant in its own Reply introduces a Department of State memorandum confirming the U.S. Government's view that the IOIA, the United Nations Participation Act and Appropriations Legislation all operate collectively to govern U.S. participation in the UN ("Collective UN Participation Legislative System"), including regarding immunity. UNRWA Reply at 23 (citing Memorandum Prepared in the Department of State for the White House (May 29, 1953), in III Foreign Relations of the United States 1952-1954: United Nations Affairs, 80-81 (Ralph R. Goodwin & William Z. Slany eds., 1979)).

### C. ICJ Submissions Do Not Reflect Post-Ratification Understanding of the CPIUN Signatories.

Finally, Defendant also introduces for the first time in its Reply various foreign Member State submissions, which informed the ICJ's *Obligations of Israel* Advisory Opinion. Among the submissions to which the Defendant cites is that of Egypt's, which contends "As a subsidiary organ of the United Nations, the absolute immunity enjoyed by UNRWA covers legislative, adjudicatory, and enforcement jurisdiction of United Nations Member States"[12] One of the new documents UNRWA newly introduces in its Reply reveals that this was not Egypt's "post-ratification understanding", as Egypt initially refused, as a member-state, to recognize UNRWA as a UN-subsidiary organ entitled to immunity.[13] Indeed, this confirms Plaintiffs' argument that the agreements UNRWA struck with host countries were specifically executed to effectuate its immunity under CPIUN in the face of those countries' post-ratification understanding that the

---

[12] Submission of Egypt at ₱125 *available at* https://icj-web.leman.un-icc.cloud/sites/default/files/case-related/196/196-20250228-wri-20-00-en.pdf

[13] Rep. of the Special Political Committee, at 5, UN Doc. A/4342 (1959) (seeking to give effect to Paragraph 47 of the Director's Report); Annual Report of the Director at ¶47, UN Doc. A/4213 (1959) ("difficulties can be resolved" if host governments would recognize UNRWA as being covered by the CPIUN); *Id.* at ¶43 (noting Egypt's continued refusal to recognize UNRWA's status as a "subsidiary organ" and its immunity under the CPIUN).

CPIUN itself did not effectuate such immunity.[14] These submissions were introduced as a new legal theory, and apart from the Defendant's previously invoked argument that CPIUN § 30 elevates the interpretive weight of ICJ determinations, although they do contradict—and do not support—that argument. UNWRA Reply at 8. Section 30 provides a mechanism for resolving disputes between State Parties and/or the UN under the CPIUN, it is not an invocation of international law that would direct domestic courts to treat past ICJ advisory opinions as binding rules of decision in private litigation. If anything, the Defendant's newly introduced submissions are illustrative of the political nature of the ICJ and thus reflect that CPIUN § 30 does not somehow implement the advisory opinion as an interpretive tool. The Defendant's submissions focus on Israel as an international actor, and whether UNRWA's asserted and alleged violations of its premises as being protected conduct even though UNRWA's premises were allegedly used by the U.S. designated foreign terrorist organization HAMAS for holding hostages and to support its many other militant activities.

These submissions underscore why under U.S. law, even if CPIUN § 30 could be interpreted as converting an advisory opinion into a "binding" judgment, not even an ICJ determination that purports to address the merits *of this case* would have domestic legal effect. *See Medellín*, 552 U.S. at 509–10. To credit against a private litigant any interpretive weight to any "advisory opinion" issued by a political tribunal—that as a UN "organ" itself has a strong legal interest in an expansive application of UN immunity and that adjudicates matters between and concerning *State Parties*—would be difficult to reconcile with U.S. jurisprudence. *Al-Bihani*, 619 F.3d at 41 ("One can have the greatest respect (as I do) for the judges on the ICJ and at the same time think it odd

---

[14] ECF No. 29 at 23-24.

for a U.S. court to give more weight to the views of Chinese and Russian jurists, for example, than to the interpretation of the U.S. President.") (Kavanaugh, J., concurring).

**D.  Defendant's New Arguments Confirm That It Is Not Immune Under CPIUN or IOIA**

In cases such as this, where a statute and treaty pertain to the same subject matter, courts "construe earlier and later provisions in a way that is consistent with the intent of each and that results in an absence of conflict between the two." *Adams Challenge (UK) Ltd. v. Comm'r of Internal Revenue*, 156 T.C. 16, 45 (2021). Here, the record is undisputed that Congress has legislated, within the Collective UN Participation Legislative System, both that U.S. *must* participate in an organization for immunity to attach and that the U.S. *does not* participate in UNRWA, which is confirmed by UNRWA's lack of participation capacity, resulting in a necessary finding that the statute compels a finding of no immunity. *See supra* at 6.

Thus, the Defendant must establish a "clear repugnancy" of this in the treaty for a later in time analysis to apply, which it simply cannot do. *Adams Challenge*, 156 T.C. at 45. Applying the relevant tools of interpretation, such a showing cannot be made, because a textual reading of the flexibly-applied CPIUN independently compels denying immunity. *See supra* at 4. The UN Charter's drafting history, to the extent it has any weight, only shows that the CPIUN intentionally chose not to confer immunity on the definitionally broader "Organization"—which even still may not have included UNRWA—and rather only on the specifically identified entity, the "United Nations," not on UNRWA. *Id.* The post-ratification understanding of the U.S. government was that the CPIUN did not expand entity immunity beyond what the IOIA provided, and the post-ratification understanding of the governments that hosted UNRWA's activity was that the CPIUN did not immunize UNRWA absent a separate confirming agreement, which UNRWA does not have with the United States. *Id.* at 4, 6; ECF No. 29 at 24. The Executive Branch, which is empowered to determine which entities enjoy immunity and to whose views on this matter great

9

weight is given, similarly concluded that UNRWA is not entitled to immunity for reasons that functionally include UNRWA's lack of participation capacity.  U.S. Amicus Br.*, Estate of Tamar Kedem Siman Tov,* at 9.  Lastly, even if this court were to construe a conflict between statute and treaty, the legislation confirming no U.S. participation in UNRWA post-dates the treaty and, therefore, the Collective UN Participation Legislative System controls. ECF No. 29 at 17-19; UNRWA Reply at 17.

## CONCLUSION

As described above, the Defendant UNRWA has introduced new factual assertions and legal arguments that were not presented in its Opening Brief. However, , for the reasons set forth herein, none of these new assertions or legal arguments support dismissing the Plaintiffs' Amended Complaint and accordingly, the Court should deny the Defendant's Motion to Dismiss.

Dated: March 9, 2026                    Respectfully Submitted,

HEIDEMAN NUDELMAN & KALIK P.C.

By:      */s/ Joseph H. Tipograph*
         Richard D. Heideman (No. 377462)
         Noel J. Nudelman (No. 449969)
         Tracy Reichman Kalik (No. 462055)
         Joseph H. Tipograph (No.997533)
         HEIDEMAN NUDELMAN & KALIK, PC
         5335 Wisconsin Avenue, NW; Suite 440
         Washington, DC  20015
         Telephone: 202.463.1818
         Facsimile: 202.463.2999