Case 1:25-cv-02490-RCL    Document 46    Filed 04/03/26    Page 1 of 22

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ESTATE OF SHA'ARABANY, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED NATIONS RELIEF AND WORKS AGENCY FOR PALESTINE REFUGEES IN THE NEAR EAST (UNRWA), *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:25-cv-02490-RCL<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>STATEMENT OF INTEREST OF THE UNITED STATES</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

A.     Legal Framework ................................................................................................ 1

B.     UNRWA Lacks Immunity .................................................................................. 5

     1.     CPIUN.................................................................................................. 5

     2.     IOIA ................................................................................................. 11

C.     UNRWA's Arguments are Unavailing .......................................................... 11

CONCLUSION.................................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Abbott*,
   560 U.S. 1 (2010).................................................................................................... 15

*Bond v. United States*,
   572 U.S. 844 (2014)................................................................................................. 3

*Brzak v. United Nations*,
   597 F.3d 107 (2d Cir. 2010) .................................................................................... 3

*Commerce Bank, N.A. v. Chrysler Realty Corp.*,
   244 F.3d 777 (10th Cir. 2001) ................................................................................. 6

*Estate of Tov by Kedem v. United Nations Relief & Works Agency*,
   807 F. Supp. 3d 208 (S.D.N.Y. 2025), *appeal pending*, No. 25-2837 (2d Cir.)....................... 14

*Flores v. South Peru Copper Corp.*,
   414 F.3d 233 (2d Cir. 2003) ................................................................................. 7, 8

*Foster v. Nielson*,
   27 U.S. 253 (1829).................................................................................................. 13

*Jam v. International Finance Corp.*,
   586 U.S. 199 (2019)................................................................................... 1-2, 4, 11

*Klayman v. Obama*,
   125 F. Supp. 3d 67 (D.D.C. 2015) ........................................................................... 3

*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*,
   32 F.2d 195 (2d Cir. 1929)....................................................................................... 9

*Lempert v. Rice*,
   956 F. Supp. 2d 17 (D.D.C. 2013) ........................................................................... 3

*Medellin v. Texas*,
   552 U.S. 491 (2008)........................................................................................ *passim*

*Rodriguez v. Pan American Health Organization*,
   29 F.4th 706 (D.C. Cir. 2022)................................................................................ 4, 5

*Rubin v. Islamic Republic of Iran*,
   583 U.S. 202 (2018)................................................................................................. 1

*Sumitomo Shoji Am., Inc. v. Avagliano*,
   457 U.S. 176 (1982)................................................................................................ 15

*United States v. Rahimi*,
   602 U.S. 680 (2024) .......................................................................................................... 12

*United States v. Stuart*,
   489 U.S. 353 (1989) ......................................................................................................... 5, 6

*Verlinden B. V. v. Central Bank of Nigeria*,
   461 U.S. 480 (1983) ........................................................................................................... 1

**Statutes**

22 U.S.C. § 288 .................................................................................................................... 4, 11

28 U.S.C. § 517 ......................................................................................................................... 1

28 U.S.C. § 1605 ...................................................................................................................... 11

28 U.S.C. § 1605A .................................................................................................................. 11

**Executive Orders**

Exec. Order 9698, 11 Fed. Reg. 1809 (Feb. 20, 1946) ........................................................ 4

Exec. Order 9863, 12 Fed. Reg. 3559 (May 31, 1947) ........................................................ 4

Exec. Order 10864, 25 Fed. Reg. 1507 (Feb. 18, 1960) ...................................................... 4

Exec. Order 12628, 53 Fed. Reg. 7725 (Mar. 8, 1988) ....................................................... 4

Exec. Order 14199, 90 Fed. Reg. 9275 (Feb. 4, 2025) ........................................................ 5

**Treaties**

Convention on Privileges and Immunities of the United Nations,
   21 U.S.T. 1418 (1970) ..................................................................................................... 3, 6

Convention on the Privileges and Immunities of the Specialized Agencies,
   33 U.N.T.S. 262 (1949),
   https://treaties.un.org/doc/Publication/UNTS/Volume%2033/v33.pdf ............................... 3, 4

U.N. Charter, 59 Stat. 1031 (1945) ......................................................................... *passim*

**UN Documents**

G.A. Res. 302 (IV) (Dec. 8, 1949) ................................................................................ 5, 7, 12

**Other Authorities**

August Reinisch, *Immunity of Property, Funds, and Assets (Article II Section 2 General Convention)*, in *The Conventions on the Privileges and Immunities of the United Nations and its Specialized Agencies: A Commentary* (August Reinisch, ed., 2016) ........................... 13

Ben Hubbard, *How a U.N. Agency Became a Flashpoint in the Gaza War*, N.Y. Times Magazine (Sept. 12, 2024) .............................................................................. 15, 16

Cong. Res. Serv., *UN Relief and Works Agency for Palestine Refugees in the Near East (UNRWA): Background and U.S. Funding Trends* (Jan. 17, 2025), https://www.congress.gov/crs-product/IF12863 ........................................................................ 8

Fox & Webb, *The Law of State Immunity* (3d ed. 2015) ............................................................. 10

J.L. Brierly, *The Law of Nations* (Sir Humphrey Waldock ed., 6th ed., 1963) ............................. 7

Khan & Kirchmair, *Article 22, The Charter of the United Nations: A Commentary* (Simma et al. eds., 4th ed., 2024) ................................................................ 2, 6, 14, 15

Paul C. Szasz, *The Complexification of the United Nations System*, 3 Max Planck UNYB 1 (1999) ............................................................................................................ 14

Restatement (Fourth) of Foreign Relations Law (2018) ................................................................. 6

*S. Exec. Rep. No. 91-17 (Mar. 17, 1970) ...................................................... 8, 9, 10, 13

The United Nations System, https://www.un.org/sites/un2.un.org/files/un_system_chart.pdf ............................................. 12

United Nations, *Subsidiary Organs of the General Assembly*, https://www.un.org/en/ga/about/subsidiary/index.shtml ............................................................ 7

United Nations, *UN System*, https://www.un.org/en/about-us/un-system ............................................................................... 2

UNRWA, "Programme Budget: 2024–2025," (Aug. 2023), https://www.unrwa.org/sites/default/files/2024-2025_programme_budget_ blue_book.pdf ................................................................................................. 8, 10, 15

William Dale, *UNRWA—A Subsidiary Organ of the United Nations*, 23 Int'l & Comp. L.Q. 576 (1974) ............................................................................................ 10

91 Cong. Rec. 5263–65 (Feb. 27, 1970) ...................................................................................... 9

91 Cong. Rec. 17130–31 (May 26, 1970) ..................................................................................... 9

**INTRODUCTION**

The Complaint in this case recounts horrific crimes committed by Hamas on October 7, 2023. The Complaint further alleges that the United Nations Relief and Works Agency for Palestine Refugees in the Near East ("UNRWA") played a significant role in those heinous offenses. UNRWA has filed a motion to dismiss arguing, in part, that this Court lacks subject matter jurisdiction as to Plaintiffs' claims against UNRWA because UNRWA is immune from suit. *See* Def. UNRWA's Mem. of Points & Authorities in Support of Mot. to Dismiss, ECF No. 27-1 ("MTD Mem."). The Government takes no position on the merits of Plaintiffs' claims. However, the United States' view is that UNRWA is not immune from this litigation. Pursuant to 28 U.S.C. § 517,[1] the United States respectfully files this statement of interest to explain its views and to urge the Court to deny UNRWA's motion to dismiss on immunity grounds.

**ARGUMENT**

**A. Legal Framework**

The Constitution does not grant immunity to foreign sovereigns or organizations. Instead, such immunity "'is a matter of grace and comity on the part of the United States.'" *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 208 (2018) (quoting *Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480, 486 (1983)). By treaties and statute, Congress and the Executive Branch have together established the legal regime that governs whether UNRWA is entitled to immunity from suit in federal courts.

"In the wake of World War II, the United States and many of its allies joined together to establish a host of new international organizations . . . includ[ing] the United Nations." *Jam v.*

---

[1] 28 U.S.C. § 517 authorizes the Attorney General to send any officer of the Department of Justice "to attend to the interests of the United States in any suit pending in a court of the United States, or in a court of a State, or to attend to any other interests of the United States."

*International Finance Corp.*, 586 U.S. 199, 202 (2019). The United States ratified the United Nations Charter on August 8, 1945, and the United Nations came into existence two months later, that October. *See* U.N. Charter, 59 Stat. 1031 (1945).

The United Nations Charter provides that the "Organization" of the United Nations is made up of six "principal organs." U.N. Charter, Art. 7(1). They are the General Assembly, the Security Council, the Economic and Social Council, the Trusteeship Council, the International Court of Justice, and the Secretariat. *Id*. Of these principals, the Charter authorizes two—the General Assembly and Security Council—to "establish such subsidiary organs as it deems necessary for the performance of its functions." *Id.*, Arts. 22, 29; *see id.*, Art. 7(2) ("Such subsidiary organs as may be found necessary may be established in accordance with the present Charter."). The Charter also refers to "specialized agencies" that may be "established by intergovernmental agreement[,] hav[e] wide international responsibilities," and be "brought into relationship with the United Nations." U.N. Charter, Art. 57.

Altogether, the United Nations is composed of or affiliated with a collection of entities that take an "enormously wide range of organizational forms." Khan & Kirchmair, *Article 22, The Charter of the United Nations: A Commentary* 982 (Simma et al. eds., 4th ed., 2024); *see* United Nations, *UN System* (listing, among others, six "Funds and Programmes," nine "Other Entities and Bodies," and eight "Related Organizations").[2] Notwithstanding the few legal forms articulated in the Charter, in practice these entities have distinct "legal, institutional, and factual ties" with the United Nations that defy neat "classification." Khan & Kirchmair, *supra*, at 982; *see id.* at 982–84 (describing difficulties in labeling).

---

[2] https://www.un.org/en/about-us/un-system.

As for the United Nations and its organs, the U.N. Charter provides that the "Organization shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfilment of its purposes." Art. 105(1). While this Article's protection for the "Organization" has been generally understood to also cover the United Nations' principal and subsidiary organs, *see*, *e.g.*, *Lempert v. Rice*, 956 F. Supp. 2d 17, 24 (D.D.C. 2013), the U.N. Charter itself is not self-executing (that is, it has no domestic legal force in U.S. courts on its own), *Medellin v. Texas*, 552 U.S. 491, 508–09 (2008).

To effectuate this aspect of the U.N. Charter, the United States eventually ratified the Convention on Privileges and Immunities of the United Nations ("CPIUN"). 21 U.S.T. 1418 (1970). That treaty affords immunity to the "United Nations" and certain of its officials. CPIUN, Art. II, § 2; Art. IV, § 11. By its terms, the CPIUN is designed to effectuate Articles 104 and 105 of the Charter (those about immunity); its reference to the "United Nations" is thus commensurate with the Charter's—*i.e.*, the United Nations and its organs. CPIUN, Preface; *cf. Bond v. United States*, 572 U.S. 844, 855 (2014) (an implementing instrument must be read in light of what it is implementing). The Second Circuit holds that the CPIUN is self-executing and confers "absolute immunity" upon the United Nations that is "binding on American courts." *Brzak v. United Nations*, 597 F.3d 107, 112 (2d Cir. 2010); *see also Klayman v. Obama*, 125 F. Supp. 3d 67, 92–93 (D.D.C. 2015).

The CPIUN has nothing to say regarding other entities, such as specialized agencies. Accordingly, certain countries have decided to ratify the Convention on the Privileges and Immunities of the Specialized Agencies ("CPISA") to insulate many of these other organizations. The CPISA grants immunity to "specialized agencies"—as well as certain enumerated international organizations such as the World Health Organization and the United Nations

3

Educational, Scientific, and Cultural Organization.  CPISA, Art. I, § 1; Art. III, § 4, 33 U.N.T.S. 262 (1949).[3]  "But the United States has never ratified the CPISA."  *Rodriguez v. Pan American Health Organization*, 29 F.4th 706, 719 (D.C. Cir. 2022).  Rather, Congress enacted the International Organizations Immunities Act ("IOIA"), 22 U.S.C. § 288 *et seq.*, to provide select immunity where fitting.  *See Rodriguez*, 29 F.4th at 719 (explaining that the Senate Report accompanying the CPIUN indicated that "the political branches had not ratified treaties like the CPISA because they thought that the IOIA itself provided sufficient immunity to international organizations").

Under the IOIA, the President has the power to designate by executive order the "public international organization[s]" that are eligible to receive the Act's protections.  22 U.S.C. § 288. The IOIA—unlike the CPIUN—does not afford organizations absolute immunity.  Instead, it affords international organizations the "same immunity" from suit that foreign governments enjoy "at any given time"—*i.e.*, currently a more "restrictive" form of immunity established by the Foreign Sovereign Immunities Act.  *Jam*, 586 U.S. at 202, 215.

The United States enacted the IOIA in 1945.  The next year, President Truman designated the "United Nations" as a "public organization" covered by the Act.  Exec. Order 9698, 11 Fed. Reg. 1809 (Feb. 20, 1946).  Presidents have since designated a host of U.N.-related entities for protection under the IOIA over many decades.  *See*, *e.g.*, Exec. Order 9863, 12 Fed. Reg. 3559 (May 31, 1947) (United Nations Educational, Scientific, and Cultural Organization); Exec. Order 10864, 25 Fed. Reg. 1507 (Feb. 18, 1960) (Pan American Health Organization); Exec. Order 12628, 53 Fed. Reg. 7725 (Mar. 8, 1988) (United Nations Industrial Development Organization).

* * *

---

[3] Available at https://treaties.un.org/doc/Publication/UNTS/Volume%2033/v33.pdf.

In sum, U.S. law has set a dividing line when it comes to immunity for international organizations. On one side is the CPIUN, which confers an immunity that is exceptional in strength, but narrow in scope, and whose absolute shield extends only to the United Nations and its principal and subsidiary organs. On the other side of the line is the IOIA, which is the source of immunity available to certain other international organizations, but requires specific presidential designation.

### B. UNRWA Lacks Immunity

The United Nations Relief and Works Agency for Palestine Refugees in the Near East was created in 1949. G.A. Res. 302 (IV) (Dec. 8, 1949). No President has expressly extended the IOIA to UNRWA. Indeed, President Trump last year cut funding to UNRWA because it "has reportedly been infiltrated by members of groups long designated by the Secretary of State (Secretary) as foreign terrorist organizations." Exec. Order 14199, 90 Fed. Reg. 9275 (Feb. 4, 2025).

Because UNRWA has never been designated under the IOIA (and because President Truman's designation of the "United Nations" under the IOIA does not apply to UNRWA, *see infra*), UNRWA's path to immunity must run through the CPIUN. Whether UNRWA is entitled to immunity from suit, thus, turns on the question whether UNRWA is a "subsidiary organ" of the United Nations. For both formal and functional reasons, taken together, UNRWA is not.

### 1.    CPIUN

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin*, 552 U.S. at 506. The "clear import of treaty language controls unless application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." *Rodriguez*, 29 F.4th at 718 (quoting *United States v. Stuart*,

489 U.S. 353, 365–66 (1989)). While a treaty's text is most important, other "aids to its interpretation" are available too. *Medellin*, 552 U.S. at 507. Particularly instructive are those that shed light on how the President and Senate understood the treaty to which they were agreeing. *See id.* at 510 (hearing testimony from State Department); *Stuart*, 489 U.S. at 366–67 (1989) (Senate Committee Report and legislative history); *see generally* Restatement (Fourth) of Foreign Relations Law § 306, Reporter's Note 11 (2018) (U.S. courts "have considered U.S. domestic materials relating to the negotiation of the treaty or produced during the U.S. ratification process," unlike the approach taken internationally). The relevance of domestic aids to interpretation is especially so where a court is determining whether a treaty is "self-executing" such that it is enforceable in U.S. courts as a matter of domestic law. *See Medellin*, 552 U.S. at 509–10 (reviewing legislative history in answering this question).

The CPIUN provides "immunity from every form of legal process" to the United Nations and its organs. CPIUN, Art. II, § 2. Defendants do not (and cannot) argue UNRWA is a principal organ; the only question is whether it is a subsidiary one.

On that score, the Charter grants the General Assembly and Security Council a confined ability to create subsidiary organs. Namely, either may "establish[]" those "subsidiary organs" it "deems necessary for the performance of its functions." U.N. Charter, Arts. 22, 29. Thus, by the Charter's terms, a subsidiary organ must exercise delegated power from its principal; it must "perform" a subset of those "functions." Said differently, a subsidiary organ must exercise subsidiary powers. After all, "no one may transfer more than he owns." *Cf. Commerce Bank, N.A. v. Chrysler Realty Corp.*, 244 F.3d 777, 780 (10th Cir. 2001); *see* Khan & Kirchmair, *supra*, at 995 ("[T]he general principle applies that no one can transfer more competences than they themselves possess.").

6

UNRWA was established by the General Assembly.  G.A. Res. 302 (IV) (Dec. 8, 1949). Therefore, whether UNRWA is a "subsidiary organ" of the United Nations turns on whether UNRWA is "performing" the derivative "functions" of the General Assembly.

There is little basis under the text of the Charter to say the answer to that question is yes. The Charter spells out in Articles 10 to 17 the precise functions of the General Assembly:  Those functions include the power to "discuss" various questions, to "make recommendations" to members or the Security Council, to "consider" certain principles, to "call" to the attention of the Security Council certain situations, to "initiate studies," to "recommend" certain measures, to "receive and consider" various reports, and to "consider and approve" the budgets of the United Nations and affiliated entities.

To put it briefly: "All that the General Assembly can do is to discuss and recommend and initiate studies and consider reports from other bodies.  It cannot *act* on behalf of all the members, as the Security Council does, and its decisions *are not directions telling the member states what they are or are not to do*."  *Flores v. South Peru Copper Corp.*, 414 F.3d 233, 261 (2d Cir. 2003) (quoting J.L. Brierly, *The Law of Nations* 110 (Sir Humphrey Waldock ed., 6th ed., 1963)).  It should be little surprise that many of the General Assembly's subsidiaries are, like their principal, deliberative bodies—boards, committees, councils, and working groups.  United Nations, *Subsidiary Organs of the General Assembly*.[4]

UNRWA is different in kind.  UNRWA is charged with running a massive "direct relief and works program[]."  G.A. Res. 302 (IV) ¶ 7.  And as part of that, UNRWA has grown into an enormous on-the-ground operation: It has an annual budget around $1 billion; employs over 30,000 people; and has served as a major provider of social services (*e.g.*, healthcare, sanitation,

---

[4] https://www.un.org/en/ga/about/subsidiary/index.shtml.

education) to millions of people in the region.  UNRWA, "Programme Budget: 2024–2025," ¶ 1.32 & Table 1-1 (Aug. 2023) (UNRWA Budget)[5]; Cong. Res. Serv., *UN Relief and Works Agency for Palestine Refugees in the Near East (UNRWA): Background and U.S. Funding Trends* (Jan. 17, 2025)[6].

To say the least, that is not the work of a group mandated to only "discuss and recommend and initiate studies and consider reports from other bodies."  *Flores*, 414 F.3d at 261.  But that is "[a]ll that the General Assembly can do."  *Id.*  And since the General Assembly *itself* lacks the power to operate a comprehensive quasi-governmental aid program, it follows *a fortiori* that one of the General Assembly's subsidiary organs cannot either.  Again, under the Charter, a subsidiary organ must "perform" some of its principal's "functions."  And in no sense of those words does that depict UNRWA.

There is every indication that the Executive Branch and the Senate understood the CPIUN to have the sort of limited scope that the Charter's plain text would compel.  In particular, they understood the "United Nations" to reach a circumscribed universe of entities; the CPIUN was not a blank check for the United Nations (or General Assembly) to extend absolute immunity to whomever it wished.

Indeed, in the lead-up to the CPIUN's ratification, the Report of the Senate's Committee on Foreign Relations described the treaty as effectuating a "minor" change to the "scope" of the immunity that the United Nations already enjoyed under the IOIA—such as affording greater immunity to certain persons (*e.g.*, diplomatic staff).  S. Exec. Rep. No. 91-17, at 1, 3 (Mar. 17, 1970) (Senate Report); *see id.* at 8, 12, 15, 17 (testimony of the U.S. Ambassador to the United

---

[5]    Available    at    https://www.unrwa.org/sites/default/files/2024-2025_programme _budget_blue_book.pdf.

[6] Available at https://www.congress.gov/crs-product/IF12863.

Nations and the State Department's Legal Adviser). But nobody believed that the CPIUN would markedly expand the universe of *entities* shielded by the United Nations' existing immunity. To the contrary, the State Department affirmed that the CPIUN reached only the United Nations "itself" and did not mark a "significant change" from current practice—meaning, critically, that "regional organizations or specialized United Nations agencies" were not included, and instead were subject to a separate treaty (the CPISA) to which the Executive Branch had no intention of making the United States a party. *Id.* at 11, 37.

More, if there was a hint the CPIUN was going to extend immunity to UNRWA, someone would have noticed. In the months surrounding the CPIUN's ratification, a number of Members of Congress were expressing concern that UNRWA was materially supporting terroristic activities. *See*, *e.g.*, 91 Cong. Rec. 5263–65 (Feb. 27, 1970) (Sen. Dodd) (raising concern UNRWA was staging "training grounds for Arab guerillas"); 91 Cong. Rec. 17130–31 (May 26, 1970) (Sen. Scott) (stating that UNRWA supplies "teaching materials" that "implant hatred of Israel"). One of those Members—Senator Scott—*voted for the CPIUN* two months before he went to the floor to say how UNRWA had been radicalizing the region.

Further, principles of sovereign immunity—long recognized in U.S. courts—underscore that an entity like UNRWA would not have been seen as a "subsidiary organ" of the General Assembly at the time of the CPIUN's ratification for purposes of absolute immunity. Courts have long had to decide whether an entity created by a state is a part of that state itself (and is thus shielded by the state's immunity). *See*, *e.g.*, *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 199–200 (2d Cir. 1929). And general principles of sovereign immunity set the dividing line along intuitive factors. On the one hand, "[c]lose links with the structure of government and performance of core public functions," "active supervision" by the government,

and "employees hired in accordance with public employment conditions" may indicate an entity is "an organ of state." Fox & Webb, *The Law of State Immunity* 353 (3d ed. 2015). On the other, an entity's "constitution, its powers, its duties, source of funding, its activities and relationship with the home State, particularly the capacity to sue and be sued, independence to make contracts and dispose of property" may reflect a "a private entity not enjoying State immunity." *Id.*

Those considerations cut strongly in a single direction. UNRWA's powers and duties differ markedly from the General Assembly's; its employees appear to be exempt from the general staff rules and regulations of the United Nations, instead governed by UNRWA's distinct system; more than 90% of its core funding comes from outside the United Nations; and UNRWA maintains its own legal capacity to independently enter into contracts and dispose of property in its name. *See*, *e.g.*, William Dale, *UNRWA—A Subsidiary Organ of the United Nations*, 23 Int'l & Comp. L.Q. 576, 590, 606 n.88 (1974); UNRWA Budget at 1–3. If the General Assembly was a state, UNRWA would not have been viewed as one of its "organs." And that is especially instructive, because when giving its advice-and-consent to the ratification of the CPIUN, the Senate understood that the United Nations' immunity should be viewed in the same light as that of "foreign governments." Senate Report, at 2; *cf.* Fox & Webb, *supra*, at 357–58 (explaining that where a sovereign received absolute immunity, any extension to its subsidiaries or affiliates was jealously guarded).

In truth, UNRWA looks a lot more like one of the United Nations' "specialized agencies"—*i.e.*, those entities that have "wide international responsibilities, as defined in their basic instruments, in economic, social, cultural, educational, health, and related fields." U.N. Charter, Art. 57. *Those* sorts of entities are distinct from subsidiary organs and fall outside the narrow ambit of the CPIUN. This is not to say that such entities *cannot* ever possess immunity.

10

But such entities must be designated by the President under the IOIA in order to be outside the reach of U.S. legal process.

### 2.     IOIA

Nor is there any basis to say that UNRWA is entitled to immunity under the IOIA. Just as UNRWA is not part of the "United Nations" for purposes of the CPIUN, it is not for purposes of President Truman's designation of the "United Nations" under the IOIA. Instead, it is similar to the many other U.N.-related entities that Presidents have had to separately designate under the IOIA. If anything, UNRWA is in a far weaker position. The IOIA generally may be extended only to organizations "in which the United States participates." 22 U.S.C. § 288. But the President has cut funding to UNRWA and it is hard to see how the United States otherwise participates. And of course, even if UNRWA was encompassed by the UN's designation under the IOIA by President Truman, UNRWA would still only be entitled to like treatment as a foreign state under the Foreign Sovereign Immunities Act—and its immunity would accordingly be subject to that Act's exceptions. 28 U.S.C. §§ 1605, 1605A; *see Jam*, 586 U.S. at 215 (IOIA immunity commensurate with FSIA immunity).

### C.  UNRWA's Arguments are Unavailing

UNRWA raises a host of arguments in response to the foregoing issues that fail to support its invocation of immunity.

UNRWA relies heavily on various General Assembly resolutions or internal United Nations documents that have characterized UNRWA as a "subsidiary organ." MTD Mem. at 8–9. But these descriptions cannot bear the weight that UNRWA places on them. To start, the United Nations at times appears to use "subsidiary organ" in a colloquial sense, detached from any formal or substantive legal significance. For instance, the United Nations' official organization chart lists

11

a range of "other subsidiary organs" for the Economic and Social Council.[7]  But the Economic and Social Council has no authority to create subsidiary organs in the first place; instead, that power is reserved to the General Assembly and Security Council.  *See* U.N. Charter, Arts. 22, 29.

More fundamental, while the "understanding of signatory nations" (in this case, the member states of the United Nations) can have some bearing on the interpretation of a treaty, *Medellin*, 552 U.S. at 506–07, that practice (as with statutory interpretation) is only as valuable as its duration and consistency, *cf. United States v. Rahimi*, 602 U.S. 680, 724 (2024) (Kavanaugh, J., concurring).  And here, the United Nations' depiction of where UNRWA fits within its general system should be accorded lesser weight given its historical inconsistency.

Begin with the resolution that created UNRWA in 1949.  That resolution never uses the term "subsidiary organ," nor does it cite Article 22 of the Charter (the Article empowering the General Assembly to establish subsidiary organs).  To the contrary, the resolution "calls upon" governments to *affirmatively provide* immunity to UNRWA.  G.A. Res. 302 (IV) § 17.  But if UNRWA was already a subsidiary organ of the General Assembly, it would have already been covered (at minimum) by the CPIUN—first adopted by the General Assembly in 1946.  Moreover, after UNRWA was established, it entered into special agreements with Egypt, Lebanon, and Israel for UNRWA to be extended some form of immunity.  Pls.' Mem. in Opp'n to Def. UNRWA's Mot. to Dismiss at 23 & n.15, ECF No. 29 (collecting sources).  But each one of those countries had acceded to the CPIUN by the time of their agreement; if UNRWA was already covered by that treaty, those additional immunity-related agreements would have been entirely unnecessary.

Moreover, while General Assembly resolutions may have called UNRWA a "subsidiary organ" at times, the historical record on this point in the lead-up to the United States' ratifying the

---

[7] https://www.un.org/sites/un2.un.org/files/un_system_chart.pdf.

CPIUN is not uniform.  Among other things, throughout the 1950s, a number of foreign courts concluded that UNRWA was not in fact a subsidiary organ of the United Nations.  *See* August Reinisch, *Immunity of Property, Funds, and Assets (Article II Section 2 General Convention)* 82 n.131 (collecting conflicting cases from courts within Egypt, Jordan, and Lebanon), in *The Conventions on the Privileges and Immunities of the United Nations and its Specialized Agencies: A Commentary* (August Reinisch, ed., 2016).

Furthermore, UNRWA's arguments rooted in subsequent General Assembly publications or actions, like its arguments rooted in a recent decision of the International Court of Justice, MTD Mem. at 8, would improperly expand the scope of the "narrow" treaty that the Executive and Senate believed they were ratifying.  *See supra* pp. 8–9.  Indeed, if a "subsidiary organ" is a concept purely in the eye of a group like the General Assembly, this country would be beholden to award *absolute immunity* to whatever entity the General Assembly establishes through a general vote of member states.  That would contravene the United States' understanding in ratifying the CPIUN. *See* Senate Report at 37 (State Department explaining the CPIUN did not cover "regional organizations or specialized United Nations agencies").  This Court should not accord conclusive weight to an international entity about how to interpret a *self-executing treaty*—which, again, is "equivalent to an act of the legislature."  *Medellin*, 552 U.S. at 505 (quoting *Foster v. Nielson*, 27 U.S. 253, 314 (1829)).

UNRWA also objects that it must be treated as a subsidiary organ for purposes of the CPIUN because it does not resemble a "specialized agency" in certain procedural respects.  MTD Mem. at 10–11.  But that gets the inquiry backwards.  The relevant line is between "subsidiary organs" and everyone else; if UNRWA does not meet the former's narrow definition, that is the end of the analysis.  It is true that the U.N. Charter's text generally contemplates three sets of

13

entities—principal organs, subsidiary organs, and specialized agencies. In practice, however, the United Nations has never adhered to this formal division and has come to create an "enormously wide range of organizational forms." Khan & Kirchmair, *supra*, at 982–83; *see*, *e.g.*, Paul C. Szasz, *The Complexification of the United Nations System*, 3 Max Planck UNYB 1, 3 (1999) (explaining the "UN System" has "proliferated into a veritable jungle of miscellaneous entities"). Whether one of these organizations fits the complete definition of a specialized agency does not answer whether it is a subsidiary organ—because the latter is not some default categorization, but instead a narrow class with its own definition. UNRWA is not a subsidiary organ, regardless of whether it fits every aspect of the definition of "specialized agency" or is better construed as some other sort of international organization. To put it differently, the United Nations' failure to adhere to procedural formalities does not determine the substance of the United States' treaty obligations.

Plaintiff also relies heavily on the district court decision in *Estate of Tov by Kedem v. United Nations Relief & Works Agency*, 807 F. Supp. 3d 208 (S.D.N.Y. 2025), *appeal pending*, No. 25-2837 (2d Cir.), in which the court held UNRWA immune from similar tort claims to those pressed here. MTD Mem. at 6–8. That out-of-circuit case, no more than persuasive authority in this Court in all events, was wrongly decided for the reasons articulated in this statement and in the Amicus Brief submitted by the United States on appeal at the Second Circuit. This Court should not accept UNRWA's invitation to repeat the *Estate of Tov* court's errors. Plaintiff cites various other cases finding UN subsidiary organs to be immune from suit, MTD Mem. at 6–7, but these also bear little weight here: outside of *Estate of Tov*, none involved the opposition of the

14

United States to immunity and none involved UNRWA (with all of its attendant idiosyncrasies discussed herein).

Finally, UNRWA argues at length that the United States' views are entitled to no deference by this Court.  MTD Mem. at 20–23.  That is mistaken.  "It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to great weight.'"  *Abbott v. Abbott*, 560 U.S. 1, 15 (2010) (quoting *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184 n. 10 (1982)).  It is true the Executive Branch's current position regarding UNRWA is different from the prior Administration's position in the *Estate of Tov* litigation.  But the Supreme Court has never suggested that the Executive's expertise over treaty interpretation is limited to its first impression.  Instead, at all times, the reasoned position of the current Executive Branch remains entitled to "great weight."  And here, it is the Executive's considered view—consistent with the principles that the Executive first pressed in the testimony it submitted when seeking the Senate's advice-and-consent—that the CPIUN does not insulate UNRWA from U.S. legal process.

* * *

It bears emphasis that it is the view of the United States that nothing in the above analysis necessarily implicates any U.N.-related organization besides UNRWA.  By its own admission, UNRWA is "unique amongst UN organisations," in light of its "direct service delivery model" and the fact it is "the main provider of public-like basic services" for an entire area that contains millions of residents.  UNRWA Budget, *supra*, at 1; *see, e.g.*, Khan & Kirchmair, *supra*, at 1003 (observing UNRWA has been "granted" a "wide area of autonomy").  Or as an UNRWA official recently framed it to the N.Y. Times: The entity is "U.N. in name only."  Ben Hubbard, *How a U.N. Agency Became a Flashpoint in the Gaza War*, N.Y. Times Magazine (Sept. 12, 2024); *see*

15

*id.* (explaining there is "nothing else like [UNRWA]" in the "panoply of U.N. agencies" given its work).

The analysis would look different for an entity that performed more typical functions, had a closer relationship to the General Assembly, or worked more directly under the control of the United Nations. UNRWA's "unique" structure and operation place it at the very end of one side of the spectrum; other entities that exercise some of the General Assembly's functions or perform more limited duties stand on stronger footing. Moreover, if the United States is concerned about any international organization that lacks immunity, the President may consider whether it is eligible to be designated for protection under the IOIA.

## CONCLUSION

For the foregoing reasons, the United States respectfully urges the Court to deny UNRWA's motion to dismiss on immunity grounds. The United States takes no position on the merits of Plaintiffs' claims.

Dated: April 3, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Director

Of Counsel:

REED D. RUBINSTEIN
Legal Adviser
U.S. Department of State
Washington, D.C.

*/s/ James R. Powers*
JAMES R. POWERS (TX Bar No. 24092989)
Trial Attorney
U.S. Department of Justice,
Civil Division, Federal Programs Branch
1100 L Street, NW

16

Washington, DC 20005
Telephone: (202) 353-0543
Email: james.r.powers@usdoj.gov

*Counsel for the United States*

17