**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ESTATE OF SIVAN SHA'ARABANY, *et al.*, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> UNITED NATIONS RELIEF AND WORKS AGENCY FOR PALESTINE REFUGEES IN THE NEAR EAST, *et al.*, <br><br> *Defendants.* | No. 25-Civ-2490(RCL) |

### DEFENDANT UNRWA USA'S REPLY IN FURTHER SUPPORT OF MOTION FOR JUDICIAL NOTICE AND CONSIDERATION OF DOCUMENTS INCORPORATED BY REFERENCE

Defendant UNRWA USA hereby submits this Reply in Further Support of its Motion for Judicial Notice and Consideration of Documents Incorporated by Reference ("Motion for Judicial Notice") (ECF No 31).

### ARGUMENT

Plaintiffs' theory of the case is that public reports put UNRWA USA on notice that its funds to UNRWA were being diverted to support Hamas's terrorist operations. That, however, is not remotely true. Now, having been caught cherry-picking the public record to advance misleading claims about what was in the public domain, Plaintiffs plead with the Court to don blinkers and limit its review to the four corners of the Amended Complaint. That is not how this process works. The entire purpose of judicial noticeability and the incorporation-by-reference doctrines is to prevent a plaintiff from using "selected and misleading portions" of the public

1

record to pursue harassment litigation and extract "nuisance settlements," *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)—in short, to prevent suits like this one.[1]

A few global points are in order before turning to Plaintiffs' specific objections. First, Plaintiffs' claim that the incorporation-by-reference doctrine only applies to "'legally operative document[s]'" is incorrect. Opp. to Motion for Judicial Notice ((ECF No. 35) ("Opp.") at 2 (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015)). *Banneker* used that phrase in the context of explaining the specific rationale for considering a contract in a breach of contract dispute. *See* 798 F.3d at 1133. In fact, courts may consider any document whose "authenticity is not disputed" and which is "referred to in the complaint and . . . integral" to the plaintiff's claims. *Kaempe v. Myers*, 367 F.3d 958, 965 (2004).[2] Such documents may include, for example, news articles, *Gagnon v. Alkermes PLC*, 368 F. Supp. 3d 750, 764 (S.D.N.Y. 2019), press releases, *K-V Pharm. Co. v. United States FDA*, 889 F. Supp. 2d 119, 124 n.3 (D.D.C. 2012), and audit reports. *Robinson v. Brown*, 2018 U.S. Dist. LEXIS 176165, at *10 n.6 (S.D. Cal. Oct. 12, 2018).

Second, Plaintiffs misconstrue *Banneker*'s holding that only those parts of the document that a plaintiff "adopts" become part of the pleading. *See* Opp. at 3. Plaintiffs seem to think that language means that the Court can only consider the specific passages that are reproduced in the complaint. Were that the case, the incorporation-by-reference doctrine would be meaningless. While the Court cannot credit the truth of portions of a referenced document that are extraneous

---

[1] To be clear, the facts contained within the four corners of the Amended Complaint are insufficient to state a claim. Thus, while the Court is obligated to consider any documents incorporated by reference in the complaint and any facts which satisfy Fed. R. Evid. 201(c)(2), the outcome would be the same even if UNRWA USA had never made the instant request.

[2] "Referred to" does not require explicit mention. *See, e.g.*, *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 217-18 (D.D.C. 2012) ("[A] document need not be mentioned by name to be considered referred to or incorporated by reference into the complaint.").

to the plaintiff's claims, *Banneker*, 789 F.3d at 1133-34, or portions which a plaintiff explicitly disclaims, *see, e.g.*, *id.* at 1133 (referencing a libelous writing does not mean the plaintiff adopts the writing as true), the Court is permitted to review a document in its entirety to ascertain whether it says what the plaintiff claims. Of particular relevance here, the Court may consider selectively omitted portions of press releases, *see Gray v. Alpha & Omega Semiconductor, Ltd.*, 2021 U.S. Dist. LEXIS 183787, at *8 (S.D.N.Y. Sep. 27, 2021) (citing cases), and "the full contents" of "published articles referenced in the complaint, from which" the plaintiff draws "truncated quotations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569, n. 13 (2007).[3]

Third, while plaintiffs are correct that the Court cannot judicially notice a disputed fact, the opposing party must articulate a basis for opposition. *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1042 (S.D. Cal. 2015); *Hall v. Wash. Mut. Bank*, 2010 U.S. Dist. LEXIS 153076, at *3 n.2 (C.D. Cal. July 7, 2010). Judicial notice does not require the opposing party's consent, and the non-moving party may not veto notice by simply withholding its acknowledgement that a fact is true. *See* Fed. R. Evid. 201(b) (judicial notice appropriate where fact is "not subject to *reasonable dispute*") (emphasis added).

Fourth, the Court may not draw inferences that are foreclosed by judicially noticeable facts or by the portions of the document that become part of the pleading under the incorporation-by-reference doctrine. *See, e.g.*, *Klayman v. Fitton*, 2021 U.S. Dist. LEXIS 188119, at *9 (D.D.C. Sep. 30, 2021); *Lifeway Foods, Inc. v. Millenium Prods.*, 2016 U.S. Dist. LEXIS 176002, at *5 (C.D. Cal. Dec. 14, 2016) ("While this Court will accept as true all factual, well-pled allegations in the Complaint, it will not blindly accept allegations which are directly contradicted by evidence

---

[3] Plaintiffs also claim that *Banneker* held that the Court "'must' ignore any opinions, conclusions and new factual allegations advanced by the defendants." Opp. at 3 (purportedly quoting 398 F.3d at 1133). Neither that language nor that holding appears in the case.

subject to judicial notice."); *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (courts will not "accept allegations that represent unwarranted inferences, unreasonable conclusions or arguments, or that contradict matters properly subject to judicial notice or by exhibit.").

Finally, Plaintiffs' arguments as to the relevance and import of the judicially noticeable facts miss the mark. As set forth in the Motion for Judicial Notice (at 2-3), the Court can take judicial notice of that certain facts were in the public domain when assessing whether UNRWA USA had the requisite notice that its aid would foreseeably further Hamas's terrorist operations. Plaintiffs' response—that UNRWA USA might have known facts that were *not* part of the public domain—is non-responsive. Opp. at 5. Plaintiffs have repeatedly claimed that UNRWA USA was put on notice by "public" reports. *See, e.g.*, Opp. to MTD (ECF No. 50) at 25, 34, 44. The judicially noticeable facts give lie to that specific assertion. Whether Plaintiffs have plausibly alleged that UNRWA USA was privy to non-public information is a separate question altogether.[4]

Turning to Plaintiffs' individual objections:

**Exhibit 1**: This press release is integral to Plaintiffs' claim that UNRWA USA staff harbored "anti-Israel sentiments," Am. Compl. ¶¶ 414-15, and that the organization was indifferent to, supportive of, or otherwise ratified Hamas's infiltration of UNRWA. *See, e.g.,* Pls' Opp. to MTD at 31-32 (arguing that press release "reflects not neutrality, but conscious willingness to continue supporting [UNRWA] despite confirmed terrorist contamination"); *see also id.* at 34, 39, 41. Accordingly, the Court may consider it in its totality to determine whether it supports Plaintiffs' proposed inference. *Twombly*, 550 U.S. at 569, n. 13; *Gray*, 2021 U.S. Dist. LEXIS 183787, at *8

---

[4] The accompanying reply in support of the motion to dismiss explains why assertion fails. *See also Lavi v. Unrwa USA Nat'l Comm., Inc.*, 2025 U.S. Dist. LEXIS 153757, at *9-10 (D. Del. Aug. 8, 2025) (dismissing near-identical complaint and rejecting plaintiffs' contention that UNRWA USA was privy to non-public information about UNRWA).

(S.D.N.Y. Sep. 27, 2021). As another court has already found, the full version of this press release (which condemns the attacks and calls for those involved to be held accountable) contradicts Plaintiffs' proposed inference. *Lavi*, 2025 U.S. Dist. LEXIS 153757, at *19.

**Exhibits 2 & 3**: Plaintiffs start by denying that the US-UNRWA Framework Agreement documents are integral to the complaint only to reverse course in the next sentence, asserting that the Agreement's conditions "illustrate longstanding recognition of diversion and infiltration risks." Opp. at 7.[5] These documents are properly considered for two purposes. First, they contradict Plaintiffs' contrived claim that the U.S. Government "admonished" UNRWA USA to stop funding. *Compare* Am. Compl. ¶ 5, *with* Ex. 2 at 6 (announcing U.S. Government's commitment to supporting UNRWA's efforts to secure private funding). Second, these documents—when paired with Congress's repeated decision to re-authorize UNRWA funds in the years preceding the October 7 attacks—negate Plaintiffs' proposed inference that donors like UNRWA USA were on notice that their funds were being diverted. Specifically, they show that the U.S. Government publicly signaled to would-be donors (i) that it was monitoring UNRWA's operations to ensure that they did not facilitate Hamas's operations and (ii) that it was satisfied with UNRWA's efforts to enforce its neutrality obligations, weed out inciting curriculum, and protect its installations. Plaintiffs implore the Court to simply infer that UNRWA USA should have known that these safeguards were "structurally insufficient or foreseeably circumvented." Opp. at 7. But a plaintiff is only entitled to reasonable inferences based on adequately pled facts, *Williams v. Donovan*, 219 F. Supp. 3d 167, 172, 177 (D.D.C. 2016)—and plaintiffs do not plead any facts supporting the

---

[5] Even if the Framework Agreement documents weren't integral to the complaint, the Court can separately take judicial notice of their contents. *See, e.g.*, *Volovets v. Clinton*, 2022 U.S. Dist. LEXIS 137962, at *1 n.1 (D.D.C. June 22, 2022) (taking judicial notice of international agreement); *United States v. Benoit*, 730 F.3d 280, 285 n.8 (3d Cir. 2013) (same).

5

claim that UNRWA USA knew, or should have known, that the Government's monitoring mechanisms were insufficient.

**Exhibit 4**. Plaintiffs concede that they sourced Karen AbuZayd's statement about the need to meet with Hamas members from the UN Chronology document, *see* Am. Compl. ¶ 418, and that the document is integral to their claim that AbuZayd acted culpably in meeting with Hamas officials. The Court may therefore consider the full context of her remarks at the motion-to-dismiss stage. *See, e.g., Twombly*, 550 U.S. at 569 n.13; *Gray*, 2021 U.S. Dist. LEXIS 183787, at *8. Tellingly, Plaintiffs do not dispute any of the contextual facts (*e.g.*, that UNRWA needed to interface with local authorities, that Hamas had just taken over Gaza's ministries, and that UNRWA had not received instructions to refrain from meeting with Hamas officials) nor do they explain how their insinuation of culpability is reconcilable with those facts.

**Exhibit 5**. Plaintiffs do not contest that the 2015 Board of Inquiry Report is incorporated into the complaint and integral to their assertion that UNRWA USA was on notice that its funds would contribute to Hamas's exploitation of UNRWA facilities. In fact, the Report signals the opposite: that UNRWA was using its resources to safeguard its installations. *See Lavi*, 2025 U.S. Dist. LEXIS 153757, at *13 (holding that the omitted portions of the 2015 Board of Inquiry Report belie plaintiffs' contention that "Hamas misused UNRWA facilities with UNRWA's consent"). Plaintiffs' answer—that the Report shows that Hamas militants hid weapons in UNRWA installations—is non-responsive, since Plaintiffs rely on this document not merely to show incursions, but to establish UNRWA and UNRWA USA's supposed complicity in, acquiescence to, or ratifications of those encroachments.

**Exhibits 6 & 7**. Plaintiffs do not contest the UN Board of Auditors' reports are incorporated into the complaint and integral to their claim that UNRWA USA was on notice that

its funds would foreseeably be diverted by Hamas. *See, e.g.*, Am. Compl. ¶ 318. Plaintiffs' claim that they do not contradict their diversion risk allegations is wishful thinking. Both reports state that UNRWA has "internal controls" in place to, *inter alia*, "safeguard assets" and "prevent fraud," MTD (ECF No. 27-1) at 15—statements which directly refute Plaintiffs' contention that the audit reports put UNRWA USA on notice that its funds would foreseeably end up in Hamas's hands. Plaintiffs assert that the "absence of documented diversion in an audit report does not disprove that diversion or coercive extraction may have occurred and was foreseeable." Opp. at 9. That is a stunningly disingenuous response to being caught mischaracterizing evidence—especially given that it is Plaintiffs' burden to plausibly allege a foreseeable diversion risk, not UNRWA USA's burden to disprove it.

**Exhibits 8-10**. Plaintiffs do not dispute that the Amended Complaint's allegations about tunnel construction were sourced from these UNRWA press releases, *see* Am. Compl. ¶¶ 306-08, or that the releases are integral to their claim that funding UNRWA would foreseeably result in Hamas tunneling beneath its facilities. Plaintiffs respond that the press releases do not contradict their allegation that neutrality breaches repeatedly occurred despite UNRWA's public condemnations. Opp. at 10. That is a straw man. The press releases contradict Plaintiffs' assertion that UNRWA was somehow *complicit* in the construction of those tunnels, as well as their assertion that would-be donors could have reasonably foreseen that UNRWA funding would have enhanced Hamas's tunnel-building capacity rather than augmented UNRWA's ability to expose the tunnels.

**Exhibit 11**. Plaintiffs concede that they sourced remarks by UNRWA's Commissioner General from this New York Times article, and that those remarks are integral to their claim that UNRWA leadership failed to enforce its neutrality rules. The full context of those remarks belies that claim. *See* MTD at 20. Nor is there any question that the Court can consider the totality of the

Commissioner General's quoted remarks on a motion to dismiss. *Twombly*, 550 U.S. at 569 n.13; *Gray*, 2021 U.S. Dist. LEXIS 183787, at \*8.

**Exhibit 12**. Plaintiffs concede that this exhibit is an authentic version of the 2018 consulting report referenced in the Amended Complaint and that it is integral to Plaintiffs' claim that UNRWA was knowingly facilitating Hamas's access to hard currency by paying its staff in U.S. dollars. Their claim that it does not "contradict any allegations" in the Amended Complaint is flagrantly false. Opp. at 11. The Amended Complaint claims that the report "warned" of a "likelihood that [UNRWA's] funds could be diverted to terrorists or other appropriate recipients ('leakage'), and the use of cash to facilitate illegal trade." Am. Compl. ¶ 315. In fact, the report says no such thing: it references "leakage" in the context of cash (not salary) payments and it says that there is no documented evidence of leakage—a fact that put UNRWA's donors on notice that its funds were *unlikely* to end up in Hamas's hands. Furthermore, the report confirms that U.S. dollars are widely used in Gaza, directly contradicting Plaintiffs' claim that UNRWA staff were "compelled" to turn to Hamas-controlled moneychangers. MTD at 18-19.

**Exhibit 13**. The Court can take judicial notice of the fact that the Colonna Report publicly announced its conclusion that additional funds would assist UNRWA in enforcing its neutrality obligations. *See* MTD at 30, n.36; *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (courts may take judicial notice of what was "in the public realm"). That fact refutes Plaintiffs' conclusory assertion that UNRWA USA should have known its contributions would enable Hamas to exploit UNRWA, rather than strengthen UNRWA's ability to detect and resist that supposed exploitation.

**Exhibit 14**. Plaintiffs do not dispute that the UN Watch report—which they cite as evidence of widespread Hamas infiltration in UNRWA—only identified around a half-dozen

UNRWA employees (out of 30,000 total) who praised the October 7 attacks. *See* MTD at 17, n.25. Plaintiffs have waived any objection to the Court considering the report at the motion to dismiss stage for this limited purpose.

**Exhibit 15**. Plaintiffs do not dispute that the GAO report is incorporated into the Amended Complaint and integral to their claim that UNRWA schools promoted antisemitic and inciting content—and, by extension, to their claim that UNRWA USA was on notice that it was supporting such content by funding UNRWA. The GAO report, however, says the exact opposite. MTD at 13. Plaintiffs argue that this description cannot be trusted because it "draws its support from UNRWA officials." Opp. 11-12 (citing Ex. 15 at nn.18, 24-25). That is simply wrong. *See* MTD at 13 (citing Ex. 15 at 17-21). They seize on the report's statement that UNRWA did not train its staff on new curriculum, Opp. at 12, but they ignore the report's explanation that this was due, in part, to funding shortfalls. Ex. 15 at 21. Nothing in that report supports the inference that funding UNRWA would increase the amount of inciting content in its schools.

**Exhibit 16**. Plaintiffs concede that they sourced an UNRWA spokeswoman's remark from this Foreign Policy article, Opp. at 12, and that the quote was integral to their claim that UNRWA publicly admitted that it did not enforce its neutrality obligations. The Court's ability to consider the spokeswoman's full remarks—including her statement that "members of Hamas . . . would be subject to disciplinary action by UNRWA"—is well-established. *Twombly*, 550 U.S. at 569 n.13; *Gray*, 2021 U.S. Dist. LEXIS 183787, at \*8. Plaintiffs' argument that the article does not contradict anything in the Amended Complaint is wrong: the full quote directly contradicts the allegation that UNRWA officials admitted to only taking action against employees "found to have a political position." Am. Compl. ¶ 286. Rather than address their distortion, they invite the Court to read and consider other portions of the Foreign Policy article that were concededly not incorporated by

reference. That request is procedurally improper. *See Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 757 (D. Md. 2015) (plaintiff cannot expand factual allegations in opposition).

**Exhibit 17 and 18**. Plaintiffs do not dispute the authenticity of the CRS reports or the truth of the facts for which they are admitted—namely (1) that UNRWA provided food, shelter, education, medical care, and other humanitarian services to refugees across the West Bank, Gaza, Syria, Jordan and Lebanon, MTD at 4; (2) that UNRWA draws its 30,000-strong work force from the local refugee population, *id.*; (3) that the U.S. Government was historically UNRWA's largest contributor and contributed $371 million toward its $1.47 billion budget in 2023 alone, *id.*; or (4) that no arm of the U.S. Government found UNRWA to be out of compliance with Section 301(c) when it paused funding in 2018. *Id.* at 12, n.15. Instead, Plaintiffs gesture at the fact that some U.S. officials called UNRWA's operations "flawed" and considered its model "unsustainable." Opp. at 15 (citing Ex. 9 at 9). None of those statements have anything whatsoever to do with Plaintiffs' causes of action, which require a showing that UNRWA was actively enabling terrorism.

**Exhibit 19**. Plaintiffs neither dispute the authenticity of the GAO report, nor do they dispute the fact (1) that most of the U.S. Government's contributions were unrestricted, MTD at 4, n.4; (2) that, in the GAO's view, UNRWA's efforts to remove problematic lesson plans from its school would benefit from *more* funding, *id.* at 13, n.18; and (3) that, contrary to their allegations in the Amended Complaint, UNRWA schools in Gaza only go to Grade 9. *Id.* at 14. Plaintiffs respond that the GAO cannot be considered to establish the falsity of their claim that UNRWA uses "Hamas-approved" textbooks, but Plaintiffs neglect to mention that they already informed counsel that they were withdrawing that claim in response to UNRWA USA's January

22, 2026 Safe Harbor letter.[6] Plaintiffs then embark on a meandering discursion about UNRWA not being required to use host country textbooks and its existence exacerbating the refugee crisis. Opp. at 16-18. None of those points are germane to the instant request.

**Exhibit 20**. Plaintiffs concede the authenticity of the Donor List and recognize that they have no basis to challenge its contents. Their unexplained unwillingness to "accept" the truth of these assertions is not a cognizable argument for refusing to take judicial notice. *Shaev v. Baker*, 2017 U.S. Dist. LEXIS 68523, at *25 (N.D. Cal. May 4, 2017) (court may take judicial notice of the "truth of the matters asserted" in documents where the "information contained [therein] is not reasonably subject to dispute"). Plaintiffs' quibble over whether the number of UNRWA donor countries is 71 or 72 (depending on whether Palestine is included) is both petty and beside the point—which is that, according to Plaintiffs' theory, most of the world has "consciously and culpably participated" in Hamas's terrorist attacks. *Twitter v. Taamneh*, 598 U.S. 471, 474 (2023). No theory that sweeps so broadly can pass muster under *Twitter*. *Id.* at 489 (emphasizing the "need to cabin aiding-and-abetting liability to cases of truly culpable conduct").

**Exhibit 21**. Plaintiffs concede the authenticity of this UNRWA document and recognize that they have no basis to challenge its recitation of the number of teachers in UNRWA's employ. Accordingly, the Court can take judicial notice of the fact that UNRWA employed 20,000 educational staff. The fact provides crucial context. As explained in the motion to dismiss, Plaintiffs cite a report that 100 UNRWA teachers allegedly promoted "antisemitism" and "jihad" on social media as evidence that Hamas "structurally coopted" UNRWA. To be clear, UNRWA USA condemns all manifestations of antisemitism and deplores violence. But in no universe does

---

[6] Plaintiffs' counsel conveyed their intent to withdraw this claim, as well as the claim that 13% of Hamas's annual budget comes from UNRWA, *see* Am. Compl. ¶ 220, in their February 12, 2026 letter to undersigned counsel. To date, however, they have not formally done so.

100 out of 20,000 (or 0.5%) constitute the sort of "structural" take-over that Plaintiffs claim. MTD at 15-16.

**Exhibit 22**. Plaintiffs do not dispute that the Court can take judicial notice that OFAC published the November 14, 2023 Compliance Communique. This document disproves Plaintiffs' conclusory claim that UNRWA USA violated anti-terrorism regulations by donating to UNRWA. MTD at 9. Plaintiffs' arguments in opposition range from irrelevant to nonsensical. Plaintiffs announce that they "construe" the document as a concession that any funds given to UNRWA prior to November 14, 2023 violates anti-terrorism guidelines. But nothing in the Communique remotely supports that made-up construction. They inform the Court that they "reject Defendant's characterization of their extensive allegations of UNRWA's support for Hamas as 'incidental'" and, therefore, within the OFAC guidance. Opp. at 19. But Plaintiffs offer nothing more than their say-so in support of their claim that any aid to Hamas was non-incidental. Lastly, Plaintiffs suggest that UNRWA violated the OFAC guidance by "confirm[ing] that it had provided fuel" to Hamas. Opp. 20 (citing ECF Nos. 36-1-3). In addition to being procedurally improper, *Doe*, 123 F. Supp. 3d at 757 (court may not consider exhibits appended to plaintiffs' opposition to motion to dismiss), this claim is one more example of Plaintiffs' seemingly pathological disregard for the truth. One of the exhibits is a Tweet stating that UNRWA received reports that Hamas "removed" fuel from an UNRWA compound, ECF No. 36-1; the second is a later Tweet saying that the earlier report was *incorrect*, ECF No. 36-2; and the third is a statement by UNRWA explaining that fuel was "critical for [its] humanitarian response across Gaza." ECF No. 36-3. None of these exhibits say that UNRWA USA "provided" fuel to Hamas.

**Exhibit 23 & 24**. Plaintiffs do not dispute that the Court can take judicial notice of the fact that White House officials made the quoted statements. Their attempts to spin the quotes as

12

supporting their theory are unconvincing. Since the quotes speak for themselves, UNRWA USA will spare the Court a line-by-line analysis of why these quotes contradict Plaintiffs' assertion that the U.S. Government had put UNRWA USA on notice that its funds would be diverted to facilitate Hamas's terrorist operations.

## **CONCLUSION**

For the foregoing reasons, the Motion for Judicial Notice should be granted.

Dated:  April 24, 2026

Respectfully submitted,

/s/ Joseph Pace
J. PACE LAW, PLLC
30 Wall St, 8th Floor
New York, NY 10005
(917) 336-3948
jpace@jpacelaw.com

Maria LaHood
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6430
mlahood@ccrjustice.org

13