**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ESTATE OF SIVAN SHA'ARABANY, *et al.*,<br><br>                  *Plaintiffs,*<br><br>      *v.*<br><br>UNITED NATIONS RELIEF AND WORKS AGENCY FOR PALESTINE REFUGEES IN THE NEAR EAST, *et al.*,<br><br>               *Defendants.* | No. 25-Civ-2490(RCL) |

## DEFENDANT UNRWA USA'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................................1

ARGUMENT .....................................................................................................................................4

I.    PLAINTIFFS' OPPOSITION IS RIFE WITH MISREPRESENTATIONS AND PROCEDURALLY INAPPROPRIATE CONTENTIONS ...................................................4

II.    PLAINTIFFS FAIL TO STATE AN ATA AIDING-AND-ABETTING CLAIM .............5

    A.  Plaintiffs Fail to Trace Any Injuries to Hezbollah.........................................................6

    B.  Plaintiffs Fail to Plead That UNRWA USA Aided and Abetted Hamas's Terrorist Attacks ...........................................................................................................................7

        i.    Plaintiffs Fail to Allege a Nexus Between UNRWA USA's Aid and the Attacks That Injured Them ...........................................................................................7

        ii.   Plaintiffs Fail to Allege "Pervasive and Systemic Aid" to Hamas .........................14

        iii.  Plaintiffs Fail to Allege Culpable Participation .......................................................15

            a.  Knowing Assistance............................................................................................15

            b.  Substantial Assistance.........................................................................................19

III.   PLAINTIFFS FAIL TO STATE AN ATA CONSPIRACY CLAIM ...............................20

IV.   PLAINTIFFS FAIL TO STATE A DIRECT ATA LIABILITY CLAIM ........................21

V.    PLAINTIFFS FAIL TO STATE AN IIED OR NIED CLAIM.......................................22

VI.   THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR LEAVE TO AMEND ............................................................................................................................23

CONCLUSION................................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Abecassis v. Wyatt*,
785 F. Supp. 2d 614 (S.D. Tex. 2011) .............................................................. 14

*Ashley v. Deutsche Bank AG.*,
144 F.4th 420 (2d Cir. 2025) ............................................................................ 6

*Atchley v. Astrazeneca UK Ltd.*,
165 F.4th 592 (D.C. Cir. 2026) ................................................................. *passim*

*Bernhardt v. Islamic Republic of Iran*,
47 F.4th 856 (D.C. Cir. 2022) ................................................................. 8,18,21

*Bess v. Adams & Assocs.* ,
2018 U.S. Dist. LEXIS 171242 (E.D. Cal. Oct. 3, 2018) .................................. 5

*Boim v. Holy Land Found. for Relief & Dev.* ,
549 F.3d 685 (7th Cir. 2008) .................................................................... 17,22

*Doe v. Bibb Cnty. Sch. Dist.*,
83 F. Supp. 3d 1300 (M.D. Ga. 2015) ............................................................ 18

*Est. of Henkin v. Kuveyt Türk Katilimi Bankas, A.S.*,
2025 U.S. Dist. LEXIS 8757 (E.D.N.Y. Jan. 15, 2025) ............................. 18,19

*Finan v. Lafarge S.A.*,
2025 U.S. Dist. LEXIS 172784 (E.D.N.Y. Aug. 29, 2025) .................... 18,21,22

*Gonzalez v. Google L.L.C.*,
2 F.4th 871 (9th Cir. 2021) ............................................................................ 18

*Goziker v. U.S. DOJ*,
2025 U.S. Dist. LEXIS 150401 (D.D.C. Aug. 5, 2025) .................................. 25

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ....................................................................... 19

*Harr v. United States*,
705 F.2d 500 (D.C. Cir. 1983) ....................................................................... 17

*Harris v. Med. Transp. Mgmt.*,
317 F. Supp. 3d 421 (D.D.C. 2018) ................................................................. 4

*Honickman v. BLOM Bank SAL*,
　6 F.4th 487 (2d Cir. 2021) ..................................................................... 16,18

*Jones v. U.S. Secret Serv.*,
　701 F. Supp. 3d 4 (D.D.C. 2023) ............................................................... 4

*Kingman Park Civic Ass'n v. Gray*,
　27 F. Supp. 3d 142 (D.D.C. 2014) ............................................................. 4

*Klayman v. Fitton*,
　2021 U.S. Dist. LEXIS 188119 (D.D.C. Sept. 30, 2021) .............................. 25

*Lavi v. Unrwa USA Nat'l Comm., Inc.*,
　2025 U.S. Dist. LEXIS 153757 (D. Del. Aug. 8, 2025) ......................... *passim*

*Linde v. Arab Bank, Pub. Ltd. Co.*,
　882 F.3d 314 (2d Cir. 2018) ...................................................................... 22

*Masek v. United States*,
　2024 U.S. Dist. LEXIS 51012 (D.D.C. Mar. 22, 2024) .................................. 5

*Nat'l Council of Resistance of Iran v. Dep't of State*,
　373 F.3d 152 (D.C. Cir. 2004) ................................................................... 12

*Ofisi v. BNP Paribas, S.A.*,
　77 F.4th 667 (D.C. Cir. 2023) ..................................................................... 7

*Schneider v. Kissinger*,
　412 F.3d 190 (D.C. Cir. 2005) ................................................................... 11

*Sherrod v. McHugh*,
　334 F. Supp. 3d 219 (D.D.C. 2018) ............................................................ 11

*Siegel v. HSBC N. Am. Holdings, Inc.*,
　933 F.3d 217 (2d Cir. 2019) ............................................................. 7,15,20

*Strum v. Mardam-Bey*,
　2025 U.S. Dist. LEXIS 19759 (D.D.C. Feb. 4, 2025) ................................... 24

*Trudel v. Suntrust Bank*,
　924 F.3d 1281 (D.C. Cir. 2019) ................................................................. 24

*Twitter, Inc. v. Taamneh*,
　598 U.S. 471 (2023) ........................................................................... *passim*

*Van der Werf v. Nat'l Park Serv.*,
　No. 24-639 (TJK), 2025 WL 579704 (D.D.C. Feb. 21, 2025) ....................... 25

*Wultz v. Islamic Republic of Iran,*
  755 F. Supp. 2d 1 (D.D.C. 2010) ..................................................................... 22

*Zobay v. MTN Grp. Ltd.,*
  695 F. Supp. 3d 301 (E.D.N.Y. 2023) ....................................................... 10,11

**Statutes**

18 U.S.C. § 325 ................................................................................................. 22

18 U.S.C. § 2331 ........................................................................................... 22,23

18 U.S.C. § 2339A ............................................................................................ 22

18 U.S.C. § 2339B ............................................................................................ 22

18 U.S.C. § 2339C ............................................................................................ 22

**INTRODUCTION**

Plaintiffs' opposition underscores the frivolousness of this lawsuit. Even now, they cannot articulate a coherent nexus between UNRWA USA's assistance and the terrorist attacks that injured them. They claim that Hamas "exploits" UNRWA's operations in Gaza, but they don't argue that UNRWA USA's donations actually facilitated that exploitation, let alone explain how those donations furthered Hamas's ability to commit terrorism. They suggest that all aid to UNRWA supports terror because UNRWA's non-resettlement policy sustains a "long-term grievance structure" in which FTOs thrive. Such polemical armchair sociology—which is little more than a repackaged attack on UNRWA's internationally assigned mandate—is not entitled to a presumption of truth on a motion to dismiss. And even if it were, it wouldn't state a claim: the ATA requires conscious and culpable participation in *terrorist attacks*—not merely support for an institution that, according to its detractors, fosters the sociopolitical conditions in which terrorist ideologies gain purchase.

Plaintiffs mechanically repeat, but do not actually defend, their discredited assertion that UNRWA USA was given notice that its donations inured to Hamas's benefit. They fail to contend with the fact that the U.S. Government certified UNRWA's compliance with a raft of anti-terrorism conditions in the years leading up to the October 7 attacks, or the fact that most of the international community vouched for and continued to support UNRWA's humanitarian operations after those attacks. And they do not identify a single fact supporting the inference that UNRWA USA sought to aid Hamas rather than UNRWA's humanitarian operations.

The absence of nexus, knowledge, or intent dooms Plaintiffs' aiding-and-abetting, direct liability, and infliction of emotional distress claims. As for Plaintiffs' conspiracy claim, the opposition jettisons the one pled in the Amended Complaint and advances an entirely new theory.

1

But the new theory fails for the same reason as the old one: Plaintiffs do not allege that UNRWA USA reached any agreement with Hamas, much less an agreement to further an unlawful objective.

For these reasons, and the reasons set forth in the motion to dismiss, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I.   PLAINTIFFS' OPPOSITION IS RIFE WITH MISREPRESENTATIONS AND PROCEDURALLY INAPPROPRIATE CONTENTIONS

Plaintiffs repeatedly distort or outright misrepresent facts in their opposition. They falsely assert that UNRWA USA "did not suspend funding" after some UNRWA staff were accused of participating in the attacks. *Compare* Opp. at 2, *with* Am. Compl. ¶ 421 (acknowledging that UNRWA paused contributions in March 2024 pending two "ongoing investigations of UNRWA"). They imply that UNRWA USA's alleged provision of unrestricted funds to UNRWA was out of lockstep with U.S. Government funding practices. Opp. at 7; *but see* MTD (ECF No. 27-1) at 4, n.4 (citing GAO report showing that the U.S. Government gave unrestricted funds that were absorbed into "UNRWA's general program budget"). They again assert that UNRWA's "internal governance structures lacked meaningful transparency and external oversight," Opp. at 7, while ignoring that the audit reports incorporated into the Amended Complaint directly refute that assertion. Opp. at 7; MTD at 15. They suggest that UNRWA USA's decision to fund UNRWA while "other government donors suspended or reconsidered funding" shows culpability, but omit the fact that foreign donor governments quickly *resumed* their UNRWA contributions. MTD at 37-38. Plaintiffs also persist in claiming that UNRWA facilitated Hamas's access to hard currency by paying staff in locally unusable dollars, and that UNRWA was on notice that Hamas was diverting those payments, even though the 2018 audit report on which they rely (i) explains that dollars are usable in Gaza, (ii) says nothing about Hamas skimming salary payments, and (iii)

states that there is no documented evidence of leakage risks. MTD at 15, 18. In addition to the above, Plaintiffs repeatedly make up quotations from case law. *See infra*.

Plaintiffs also repeatedly advance unpled theories in opposition and reference sources that were not part of the Amended Complaint and as to which no proper request for judicial notice has been made. *See, e.g.*, Opp. at 10, 32, 37 (arguing that UNRWA netted $10 million in 2023/2024); *id.* at 15 (arguing that UNRWA's oversight rules are less rigorous than other "comparable U.N. agencies"); *id.* at 18 (arguing that UNRWA USA "earmarked" donations "to Gaza"); *id.* at 22, n.13 (arguing that Hezbollah caused the Bluth Plaintiffs' injuries); *id.* at 1, 15, 21 (arguing that UNRWA USA failed to adhere to U.S. funding guardrails by giving "unrestricted" funds); *id.* at 36 (arguing that co-conspirators' "convergent objective" was "preservation and advancement of generational claims against the State of Israel"); *id.* at nn.5-6, 9-10, 14 (citing UNRWA USA's Form 990s). None of these new claims and documents can be considered in an opposition to a motion to dismiss. *Coll. Sports Council v. GAO*, 421 F. Supp. 2d 59, 71 n.16 (D.D.C. 2006) ("[T]he Court does not, and cannot, consider claims first raised in the plaintiff's opposition."); *Jones v. United States Secret Serv.*, 701 F. Supp. 3d 4, 17 n.4 (D.D.C. 2023) (court cannot consider exhibits attached to plaintiffs' opposition to motion to dismiss).

## II.   PLAINTIFFS FAIL TO STATE AN ATA AIDING-AND-ABETTING CLAIM

### A.   Plaintiffs Fail to Trace Any Injuries to Hezbollah

Plaintiffs assert in a footnote that Hezbollah was responsible for the attacks that injured the Bluth Plaintiffs and they request that the Court take judicial notice of that supposed fact based on a complaint filed in a different matter. Opp. at 22, n.13. Even if the Court entertained this argument, *see Harris v. Med. Transp. Mgmt.*, 317 F. Supp. 3d 421, 426 (D.D.C. 2018) (arguments "relegated to a footnote" deemed waived), it would fail on the merits since Plaintiffs may not amend their

3

complaint in opposition, *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014), and the Court cannot take judicial notice of the truth of an allegation contained in another pleading. *Masek v. United States*, 2024 U.S. Dist. LEXIS 51012, at *19 (D.D.C. Mar. 22, 2024).

B. Plaintiffs Fail to Plead That UNRWA USA Aided and Abetted Hamas's Terrorist Attacks[1]

i. *Plaintiffs Fail to Allege a Nexus Between UNRWA USA's Aid and the Attacks that Injured Them*

To state a claim, plaintiffs must plead a "nexus between [UNRWA USA's] assistance and the acts of international terrorism that injure[d]" them. *Atchley v. Astrazeneca UK Ltd.*, 165 F.4th 592, 597 (D.C. Cir. 2026). Their attempt to do so fails at every turn.

Plaintiffs offer two different accounts of the nexus, both of which fail under *Twitter v. Taamneh*, 598 U.S. 471 (2023), and its progeny. First, they claim that UNRWA USA's aid to UNRWA promotes terrorism by "perpetuating claims to territorial return within the State of Israel across generations, thereby sustaining a long-term grievance structure." Opp. at 12. This undeveloped, tendentious assertion comes nowhere close to establishing a cognizable nexus. First, it reduces a tremendously complicated question about the sociological, political, and legal conditions that breed support for terrorism into a talking point. It asks this Court to embrace Plaintiffs' unsupported speculation that Hamas's support is rooted in the right of return, rather than in the occupation itself, or any number of economic, political, and cultural causes unrelated to UNRWA's approach to the refugee issue. Such facile conjecture is not entitled to a presumption of truth. *See Bess v. Adams & Assocs.*, 2018 U.S. Dist. LEXIS 171242, at *14 (E.D. Cal. Oct. 3, 2018) (court does not "assume the truth of Plaintiff's speculation" on motion to dismiss). Second,

---

[1] For all the reasons set forth in the motion to dismiss, this Court can dismiss Plaintiffs' aiding-and-abetting claim at *Halberstam* step two ("general awareness") without reaching *Halberstam* step three ("knowing and substantial assistance"). MTD at 25-33.

4

their theory that UNRWA USA gave money to an organization that indirectly contributed to a set of conditions that, in some unexplained way, stokes the grievances that Hamas exploits is hopelessly attenuated. *Compare Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 444 (2d Cir. 2025) (finding no "discernable nexus between the money laundering and the attacks committed against Plaintiffs," even though it was "possible that some of the Banks' transactions in the money laundering schemes produced money that was transferred to [FTO] and used to facilitate bombings"); *see also id.* at 448 (JASTA requires the defendant to "aid and abet a specific act," not a general terror "campaign"). Third, it has no limiting principle. If true, the nexus requirement is satisfied as to anyone, anywhere, who contributed to UNRWA at any time. This is the diametric opposite of the "'localized story'" that plaintiffs told in *Atchley*. Opp. at 11 (quoting *Atchley*, 165 F.4th at 607).[2]

Plaintiffs' second nexus theory is that UNRWA USA gave money to an entity that was "exploited" by Hamas. *See, e.g.*, Opp. at 12. But aiding an exploited entity is not enough: the law requires "aid to" or "participat[ion] in" a terrorist "attack." *Twitter*, 598 U.S. at 506. Plaintiffs fail to meet this standard for multiple reasons. First, they do not allege that *UNRWA USA's* funds were spent on anything other than UNRWA's concededly vast and legitimate humanitarian operations. Second, even if the funds were used exactly as Plaintiffs speculate (to pay staff, operate schools, and maintain facilities in Gaza), that does not plausibly show that the funds *facilitated* Hamas's exploitation; indeed, it is just as plausible that the funds were used to enhance UNRWA's ability to enforce neutrality rules. And third, even assuming some portion of UNRWA USA's funds were

---

[2] In *Atchley*, the plaintiffs alleged that the defendants met with, signed contracts with, and made direct payments to Jaysh al-Mahdi while that group was in the midst of carrying out attacks against American soldiers mere miles away. 165 F.4th at 607. Plaintiffs' theory, by contrast, has no temporal or geographic limitations.

ultimately used to pay a Hamas member salary, fund a school that used problematic content, or maintain a building that Hamas encroached upon, Plaintiffs do not articulate any nexus between those expenditures and the *specific* acts of terror that injured them. They do not allege, for example, that any Hamas member used his UNRWA salary or an UNRWA installation to carry out one of the injury-causing attacks. Nor do they plausibly allege that the attacks that injured them were a foreseeable, let alone "natural and virtually inevitable consequence" of the stray, problematic lesson plans that were taught in Gaza's elementary and middle schools. *Atchley*, 165 F.4th at 597.

Plaintiffs mostly ignore these points in opposition, and the arguments they do make lack merit. Thus, they invoke *Atchley* for the proposition that "[d]irect traceability is not required" because money is "fungible." Opp. at 10-11, 16. But *Atchley* did not disturb the settled presumption that aid to a legitimate intermediary is spent on lawful ends nor did it alter the corollary rule: that a plaintiff may not rely on money's "fungibility" at the pleading stage to show that the aid flowed through the intermediary to the FTO. MTD at 27-28 (citing cases). *Atchley*, which involved allegations of unmediated cash and in-kind payments to a Hezbollah proxy, 165 F.4th at 596-97, 599, 605, 610, merely held that a plaintiff need not "trace a direct line between the bribes that defendants provided" to an FTO proxy "and the specific attacks that injured plaintiffs." 165 F.4th at 606. Put differently: a plaintiff may invoke fungibility to support the inference that direct financial payments to an FTO were used in terrorism, but not to establish the inference that the funds actually *reached* the FTO.

Next, Plaintiffs assert (54 times, no less) that UNRWA USA's assistance to UNRWA was "unrestricted."[3] At best, this is a red herring. The general banking services at issue in *Bernhardt*,

---

[3] This allegation is also inconsistent with the language quoted in the Amended Complaint stating that UNRWA USA "fundraises for specific UNRWA projects where [UNRWA USA] can have an impact." Am. Compl. ¶ 13 (emphasis added).

*Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019), *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 670 (2023), and *Ashley,* were not "restricted" in any relevant sense.[4] Even so, the courts found that the complaints failed to plausibly allege that the financial services reached the FTO or facilitated its terrorist operations. *See also infra* Section II.B.3.ii. ("Amount of Assistance Provided").

At worst, the "unrestricted" claim actively undercuts Plaintiffs' nexus claim. As Plaintiffs concede, UNRWA administers a vast array of humanitarian programs that Hamas is *not* alleged to have exploited—including the provision of health care, education, shelter, and microcredit in the West Bank, Jordan, Lebanon, and Syria. Moreover, UNRWA USA's donations only accounted for around 1% of UNRWA's budget.[5] That means the totality of UNRWA USA's unrestricted donations could plausibly have been expended in places other than Gaza and on programs that Hamas could not leverage. In fact, Plaintiffs offer nothing beyond *ipse dixit* and rank speculation to support the supposition that *any* of UNRWA USA's relatively minor contributions were ultimately expended on programs that Hamas allegedly exploited in Gaza. *See Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 865 (D.C. Cir. 2022) (no nexus where "aid to Iran could just as plausibly benefit its otherwise legitimate operations rather than al-Qaeda"); *id.* (al-Qaeda-affiliated

---

[4] Plaintiffs argue that *Ofisi* and *Bernhardt* are inapposite because they involved the "passive provision of services." Opp. at 30. That is incorrect. In *Ofisi*, the defendant bank "flout[ed] U.S. sanctions on Sudan by establishing a banking relationship with the country" and actively "hid U.S. dollar transactions to and from Sudan." 77 F.4th at 670. In *Bernhardt*, the bank was alleged to have "implemented procedures to help sanctioned entities access and benefit from U.S. financial services." 47 F.4th at 862.

[5] Plaintiffs' attempt to cast doubt on the 1% figure is nonsensical. *See* Opp. at 18, n.23. They assert that UNRWA USA "earmarked" $19.3 million for Gaza. But the exhibit they cite for that proposition says no such thing, *see* ECF No. 31-22, and their earmarking claim is wholly incompatible with their theory that UNRWA USA's funds were "unrestricted" and "commingled" in UNRWA's general budget. Am. Compl. ¶ 393.

bank's "vast and otherwise legitimate operations make it impossible to infer that [defendant's] conduct was connected to al-Qaeda's attacks on [Plaintiffs] through [that bank]").

Plaintiffs' remaining nexus arguments are wide of the mark. They try to side-step the legitimate-intermediary problem by claiming that UNRWA USA and UNRWA are effectively the same entity. Opp. at 13. That is a nonstarter: the former is a U.S.-based 501(c)(3) with no international presence; the latter is an international humanitarian organization established by the U.N. General Assembly. They argue that the nexus is not attenuated because UNRWA USA only gives to UNRWA. Opp. at 13. But donee-exclusivity has no logical bearing on whether UNRWA USA's funds passed through to Hamas or facilitated the terrorist attacks that injured Plaintiffs. They claim that the nexus here is stronger than in *Twitter* because the social media companies' relationship with ISIS was not alleged to have differed from their "'arm's-length, passive, and largely indifferent relationship'" with other users. Opp. at 13 (quoting *Twitter* 598 U.S. at 475). That is baffling. In *Twitter*, the social media companies had a *direct* relationship with ISIS members (*i.e.*, by maintaining their accounts), and one of the defendants (Google) was alleged to have shared advertising revenue directly with ISIS members. 598 U.S. at 482. Even so, the Court found that the nexus was insufficiently pled. UNRWA USA, by contrast, is not alleged to have had *any* relationship with Hamas—arm's-length, passive, or indifferent—let alone to have provided Hamas with funds.

Plaintiffs argue that UNRWA's supposedly cooperative relationship with Hamas supports their nexus contention. Opp. at 14. But the motion to dismiss has already detailed why Plaintiffs' allegations in this regard are exaggerated, conclusory, or squarely refuted by the Amended Complaint and documents incorporated thereto. MTD at 19-21. Plaintiffs have no answer to any of those points. Instead, they cite an UNRWA official's call for a "spirit of partnership" during a

8

meeting with FTO members. But they do not allege that this diplomatic bromide translated into or was indicative of operational support for Hamas's terrorist operations.

Next, Plaintiffs argue that UNRWA USA funded UNRWA without "safeguards" and that UNRWA failed to exercise "meaningful oversight" over its recipient funds. Opp. at 15. But these allegations were never pled, and the audit reports incorporated by reference into the Amended Complaint concluded that UNRWA had adequate controls. MTD at 15. Plaintiffs contend that UNRWA USA's "unusual" method of furnishing funds supports the inference that "the assistance supported the enterprise's operations as a whole." Opp. at 16 (citing *Atchley*, 165 F.4th at 606). But the Amended Complaint does not plausibly allege that UNRWA USA broke any laws, norms, or best practices in the way it funded UNRWA; and, as explained elsewhere, providing support for an FTO's "operations as a whole," even if true, is not sufficient to state a claim. MTD at 22.

Plaintiffs suggest that a nexus can be inferred from the fact that the U.S. Government felt the need to impose safeguards on its funding. Opp. at 15, 17. That makes no sense. The U.S. Government's safeguards consisted of a certification requirement that UNRWA was meeting antiterrorism benchmarks—and in the years preceding the attacks, the U.S. Government certified compliance.[6]

        ii.       *Plaintiffs Fail to Allege "Pervasive and Systemic Aid" To Hamas*

Plaintiffs' failure to allege a "concrete nexus" between UNRWA USA's aid and the injury-causing attacks means that they must allege that UNRWA USA and Hamas were in a "'near-common enterprise'" to survive dismissal. *Atchley*, 165 F.4th at 605 (quoting *Twitter*, 598 U.S. at 501, 502).

---

[6] Plaintiffs' other contentions—that one can infer that the "object" of unrestricted funds is non-humanitarian, Opp. at 15, that UNRWA USA incurred a financial benefit, *id.* at 18, and that UNRWA USA "ratified" a known risk, *id.* at 19—go to culpability, not nexus, and are therefore addressed below.

Plaintiffs never explain how the Amended Complaint meets this high bar. Instead, they relegate the issue to a single sentence with a single case citation. Opp. at 26 (citing *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 348-51 (E.D.N.Y. 2023)). This argument is thus waived. *See Sherrod v. McHugh*, 334 F. Supp. 3d 219, 265 (D.D.C. 2018) (refusing to consider "perfunctory and undeveloped argument[]"); *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). It also fails on the merits since UNRWA USA is not alleged to have provided *any* aid to Hamas or sought to facilitate its terrorist operations. Nor is *Zobay* to the contrary. In that case, the defendant gave millions of dollars "in funding, embargoed dual-use technologies, and operational or technical support" to the Islamic Revolutionary Guard Corps ("IRGC") and took "a leadership role in a procurement scheme," whose profits the defendant knew "would flow to the IRGC and ultimately be used to fund terrorist operations." 695 F. Supp. 3d at 348. Plaintiffs here allege nothing of the sort. *See also Lavi*, 2025 U.S. Dist. LEXIS 153757, at *19 (holding that nearly identical set of allegations did not show systemic or pervasive assistance to Hamas).

### iii.  *Plaintiffs Fail to Allege Culpable Participation*

Plaintiffs' contention that they need only plausibly allege that UNRWA USA "knew its assistance would be used by Hamas to commit acts of terrorism," Opp. at 22, is wrong for reasons already explained. *See* MTD at 36. Regardless, Plaintiffs' allegations fall short of their own proposed standard.

### 1. Knowing Assistance

The motion to dismiss detailed why the Amended Complaint fails to plausibly allege that UNRWA USA actually knew its assistance would support Hamas's terrorist operations. Among other things, Plaintiffs do not plausibly allege: (1) that UNRWA USA's assistance was actually

10

expended on anything other than legitimate humanitarian programs; (2) that UNRWA USA knew this to be the case; (3) that helping UNRWA pay salaries, operate schools, and maintain installations in Gaza empowered Hamas, rather than strengthened UNRWA's ability to enforce its neutrality rules, weed out offensive curriculum, and secure its facilities; or (4) that UNRWA USA could have known that its aid was facilitating terrorism when the U.S. Government repeatedly certified UNRWA's compliance with the funding conditions and publicly encouraged private donations to UNRWA.

Plaintiffs blow past almost all of these arguments in opposition, and the few rejoinders they offer are largely non-responsive, incoherent, or based on invented case law. They claim that, where "entities are so closely aligned that funds are 'inevitably committed' to the principal," courts may disregard the corporate form; thus, they contend, "knowledge held by UNRWA . . . is properly imputed to UNRWA USA as its 'nominal donee.'" Opp. at 23 (purportedly quoting *Nat'l Council of Resistance of Iran v. Dep't of State* ("*NCRI*"), 373 F.3d 152, 157-58 (D.C. Cir. 2004)). But *NCRI* says no such thing, nor does the quoted language appear anywhere in that case. More to the point, Plaintiffs do not explain what knowledge UNRWA had that, if imputed to UNRWA USA, would establish culpability. They do not allege, for example, that UNRWA had foreknowledge that its employees planned on participating in or using UNRWA resources to carry out any terrorist attacks.

Plaintiffs argue in passing that UNRWA USA was aware that UNRWA was "intertwined" with Hamas's terrorist activities. Opp. at 23-24. UNRWA USA has already explained why this is not so. *See* MTD at 19-21, 32; *Lavi*, 2025 U.S. Dist. LEXIS 153757, at *12-15 (finding that near-identical allegations failed to establish requisite intertwinement). They claim that UNRWA USA conceded that a "substantial portion of UNRWA's workforce had links to Hamas and other FTOs."

11

Opp. at 25 (citing MTD at 32, n.37). That is a total distortion. UNRWA USA observed that *Lavi* found the intertwinement allegations lacking *even though* the plaintiffs in that case alleged that 10% of UNRWA's workforce had ties to FTOs. Plaintiffs' claim is far weaker since they do not plead the 10% figure and, instead, only identify a handful of UNRWA's 30,000 employees who were actual members of Hamas. MTD at 28, 32, n.37. Their claims of extensive infiltration are, in short, nothing more than rhetoric and bluster.

Next, Plaintiffs argue that UNRWA USA is charged with whatever knowledge former Commissioner-General Karen AbuZayd acquired while at UNRWA. Opp. at 24. But Plaintiffs cite no law supporting the novel (and nonsensical) proposition that a corporation is charged with all knowledge that its directors obtained during *prior* employment. And in any event, Plaintiffs do not allege that AbuZayd—who left UNRWA in 2010[7]—possessed any knowledge that would have put UNRWA USA on notice that its funds would further Hamas's terrorist operations.

Plaintiffs contend that UNRWA USA was "placed on notice" by: (i) the 2015 BOI report; (ii) the "2018 audit identifying UNRWA's Gaza payroll system as vulnerable to diversion into terrorist activities"; (iii) discoveries of Hamas tunnels under UNRWA facilities; and (iv) interactions between UNRWA leadership and Hamas. Opp. at 25. Plaintiffs are wrong across the board. The 2015 BOI report broadcast that UNRWA was taking steps to safeguard its installations. MTD at 14-15; *Lavi*, 2025 U.S. Dist. LEXIS 153757, at *12-13. The 2018 audit report says nothing about UNRWA's "payroll system" nor does it raise concerns about possible "diversion" by "terrorist" groups. MTD at 15. The Amended Complaint fails to cite any public records that would have put UNRWA USA on notice that UNRWA was complicit in Hamas's tunneling, and the documents on which Plaintiffs rely provide clear notice to would-be donors that UNRWA was

---

[7] *Lavi*, 2025 U.S. Dist. LEXIS 153757, at *4 n.4 (taking judicial notice of the date of her departure).

combatting tunnel construction. *Id.* at 19. As for the meetings between UNRWA and Hamas, Plaintiffs still cannot explain how such meetings—which are expressly authorized by U.S. law, MTD at 5—furthered Hamas's terrorist operations or, more importantly, put UNRWA USA on notice that *its* funds would be used for further terrorism.

Plaintiffs also ignore the public reports showing that UNRWA was a reliable steward of foreign donations. MTD at 11-16. Their answer to the U.S. Government certifications is particularly wanting. They observe that the U.S. Government is "insulated" from ATA liability and that Congress imposed these restrictions due to fears that Hamas might exploit UNRWA's operations. Opp. at 20-21. The first is a non-sequitur. The second is obtuse: the repeated funding reauthorizations sent a clear, public message that UNRWA had *allayed* those fears by, *inter alia*, inspecting its facilities, enforcing its neutrality rules, and removing inciting content from its schools. MTD at 12. Plaintiffs' final argument—that UNRWA USA "operated outside these constraints" by giving "unrestricted" funding—is nonsensical. Plaintiffs cite no law, regulation, guidance, or public recommendation that donors place restrictions on UNRWA funds. Nor is it possible for UNRWA USA to have acted "outside the constraints" of a regime that audited UNRWA's operations from top to bottom any more so than one can act outside the FAA's "constraints" by boarding a commercial flight without personally inspecting the fuselage.

Plaintiffs argue that courts can infer that the "'very object'" of "'unrestricted money'" is non-humanitarian. Opp. at 15 (quoting *Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 647 (S.D. Tex. 2011)). But in *Abecassis*, the defendants deliberately bypassed the Oil for Food Program ("OFP")—an office set up during the U.N. embargo to facilitate Iraq's purchase of food and humanitarian supplies—and bought oil by making "illegal kickbacks to a secret bank account in Jordan controlled by Saddam Hussein." 785 F. Supp. 2d at 617-18, 647-48. *Abecassis* thus stands

13

for the limited proposition that courts will not presume that the defendants intended to aid a civilian population where they make direct, illegal payments to a sanctioned entity whilst circumventing established channels for providing humanitarian assistance. It is thus doubly inapposite since UNRWA is not a sanctioned entity and there was no alternative system through which UNRWA USA was supposed to convey humanitarian aid.

Plaintiffs argue that UNRWA USA was aware that UNRWA used hateful teaching materials. Opp. at 25. The allegations fail for the reasons explained in the motion to dismiss, among them: UNRWA's use of problematic material is exaggerated (and in some cases, outright fabricated); the Amended Complaint fails to allege that UNRWA USA's money was used to promote problematic material, let alone that UNRWA USA was aware of that use; and the documents incorporated by reference in the Amended Complaint support the opposite inference– that would-be donors were on notice that their funds would assist UNRWA's efforts to excise problematic content. MTD at 13-14.

Plaintiffs assert that UNRWA USA acted with "severe recklessness" by providing "an unrestricted financial lifeline despite pervasive, well-documented red flags" that UNRWA's operations were "vulnerable to exploitation by Hamas." Opp. at 26. But, as already explained, the Amended Complaint fails to plead any red flags prior to the injury-causing attacks, *Lavi*, 2025 U.S. Dist. LEXIS 153757, at *11 (plaintiffs cannot use post-October 7 events to plead that UNRWA USA had knowledge of playing a role in Hamas's operations)—let alone any that would counter the public reporting indicating that UNRWA was taking steps to insulate its operations against Hamas infiltration. At most, Plaintiffs allege that a handful of NGOs and a minority of legislators believed that Hamas was exploiting UNRWA. That is not enough. *Siegel*, 933 F.3d at 224 (assertion "that HSBC was aware that ARB was believed by some to have links to AQI and

14

other terrorist organizations" insufficient to establish requisite knowledge). In any event, even if UNRWA were being exploited, and even if UNRWA USA knew about it, it is not enough that a defendant knows that it is funding a "system" that an FTO exploits. The defendant must know, at a minimum, that its aid is "materially support[ing] *terrorist attacks*." *Atchley*, 165 F.4th at 609 (emphasis added).[8]

Plaintiffs argue that intent to aid Hamas can be inferred from UNRWA USA's failure to "sever ties, suspend its funding, or even impose meaningful safeguards" after it emerged that UNRWA staff members participated in the October 7 attacks. Opp. at 31-32. This argument fails for multiple reasons. First, an aiding-and-abetting claim requires a defendant's awareness that it was supporting an FTO's illegal operations *before* the attack. *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 501 (2d Cir. 2021). Second, Plaintiffs concede that UNRWA USA did, in fact, pause its funding in the spring of 2024. Am. Compl. ¶ 421. Third, the Amended Complaint and judicially noticeable record disclose multiple reasons for UNRWA USA to have reasonably concluded that UNRWA was taking steps to prevent its operations from benefiting Hamas's military activities. For example, UNRWA fired all staff alleged to have been involved in the October 7 attacks and submitted to two separate investigations—steps which were praised by Biden Administration officials and which prompted the United States' western allies to resume their funding. MTD at 9, n.11 & 37-38. Finally, Plaintiffs fail to plausibly allege that UNRWA USA resumed its funding because it believed or hoped its funds would reach Hamas, rather than to contribute to UNRWA's

---

[8] Neither *Twitter* nor *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004 (11th Cir. 1985), are to the contrary. *Twitter* did not embrace a "severe recklessness" standard, and *Woods* narrowly held that severe recklessness can satisfy the scienter requirement in a claim for aiding and abetting securities fraud "where the alleged aider and abettor owes a duty to the defrauded party." *Id.* at 1011. Plaintiffs do not allege that UNRWA USA owed them any duty of care.

efforts to alleviate the humanitarian crisis in Gaza. *See Lavi*, 2025 U.S. Dist. LEXIS 153757, at *19-20.

None of Plaintiffs' cases support their ratification theory. Plaintiffs cite *Halberstam* for the proposition that "the decision to continue aiding an entity after learning of its involvement in terrorism is powerful evidence of deliberate participation in an ongoing illicit enterprise and is 'treated by the law as if it had in fact desired to produce the result.'" Opp. at 31 (purportedly quoting *Halberstam*, 705 F.2d at 502). That citation, however, does not exist (*Halberstam* only goes to page 489) and the quoted language appears nowhere in the case. *Halberstam* is also readily distinguishable. In that case, the defendant provided bookkeeping services to her live-in partner whom she knew to be a burglar, thereby enabling him to launder the proceeds of his stolen goods. 705 F.2d at 474-75. UNRWA USA, by contrast, is not alleged to have had any direct dealings with Hamas, nor to have facilitated its terrorist endeavors—knowingly or otherwise. And *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 688, 694 (7th Cir. 2008) and *Atchley* are not ratifications at all, but cases involving direct payments to a terrorist entity.

Plaintiffs' final claim—that UNRWA USA had a financial "stake" in "continuing" "the enterprise" because its revenue exceeded expenses by $10 million—fails three times over. Not only was this claim never pled, Plaintiffs fail to define what "enterprise" UNRWA USA had a financial stake in preserving and fail to articulate how a surplus is indicative of anything other than good financial management.[9]

2. Substantial Assistance

---

[9] Plaintiffs misquote the D.C. Circuit's recent decision in *Atchley* as holding that "liability squarely reaches those who 'seek only financial gain but pursue it with a general awareness' of aiding a criminal enterprise." Opp. at 32. In fact that language is from the vacated, pre-*Twitter* opinion. *See Atchley v. Astrazeneca UK Ltd.*, 22 F.4th 204, 224 (D.C. Cir. 2022). More to the point, UNRWA USA is never alleged to have "only" sought financial gain.

Given the above failings, the Court need not apply *Halberstam*'s six-part test. *See Twitter*, 598 U.S. at 493, 497, 504. Regardless, that test yields the same result.

"[N]ature of the act assisted." This first factor asks "whether the alleged aid . . . would be important to the nature of the injury-causing act." *Honickman*, 6 F.4th at 500. Plaintiffs do not allege that any of UNRWA USA's aid actually reached or benefited Hamas, nor do they plausibly allege that UNRWA's salary payments, school curriculum, or installation-management practices were "important" to the *specific* attacks that injured Plaintiffs. *Jan v. People Media Project*, 83 F. Supp. 3d 1300 (W.D. Wash. 2025), is not to the contrary. *See* Opp. at 25-26, 29. In that case, the defendants were alleged to have made direct salary payments to a Gaza-based employee whom they knew to be a Hamas spokesman holding an Israeli hostage. *Id.* at 1307-08. UNRWA USA, by contrast, is not alleged to have paid any UNRWA staff salaries, let alone to have paid the salaries of the Hamas militants who carried out the attacks against Plaintiffs.

"[A]mount of assistance provided." This factor cuts decisively against Plaintiffs since they do not plead that any assistance reached Hamas, much less quantify the amounts. *See Bernhardt*, 47 F.4th at 871 (plaintiffs failed to allege "significant aid" where they alleged that HSBC facilitated $19 billion in transactions with Iranian institutions and almost $1 billion in currency sales with a bank with extensive ties to al-Qaeda but "fail[ed] to allege how much (if any) of that money indirectly flowed to al-Qaeda"); *Gonzalez v. Google LLC*, 2 F.4th 871, 882, 907 (9th Cir. 2021), *rev'd on other grounds sub. nom. Twitter v. Taamneh*, 598 U.S. 471 (claim alleging direct payments to ISIS failed because the failure to plead "how much assistance Google provided" disallowed "the conclusion that Google's assistance was substantial")

Plaintiffs' cases are inapposite. In *Finan v. Lafarge S.A.,* 2025 U.S. Dist. LEXIS 172784 (E.D.N.Y. Aug. 29, 2025), the complaint provided a detailed accounting of the direct payments

17

the defendant made to ISIS. *Id*. at *35-36 (E.D.N.Y. Aug. 29, 2025). Likewise, in *Est. of Henkin v. Kuveyt Türk Katilimi Bankas, A.S.*, 2025 U.S. Dist. LEXIS 8757, at *10 (E.D.N.Y. Jan. 15, 2025), the complaint specified the amounts that the bank transferred, at the direction of Hamas officials, directly to Hamas fundraising entities. *Id*. at *10. Plaintiffs here do not allege direct payments of any amount to Hamas.

Whether UNRWA USA was present at the time of the principal tort. Plaintiffs do not allege that UNRWA USA was present during the attacks that injured them.

UNRWA USA's "relation to" Hamas. This factor is designed to ascertain whether the defendant occupied a "position of authority [that gives] greater force to his power of suggestion." *Halberstam*, 705 F.2d at 484. The Amended Complaint does not allege any relationship whatsoever between UNRWA USA and Hamas, much less one that would give the former any power of persuasion.

State of Mind. This inquiry is designed to determine whether the defendant consciously provided aid with the "intent and desire to make the [unlawful] venture succeed." *Id.*; *Twitter*, 598 U.S. at 496-97. The Amended Complaint is devoid of any non-conclusory allegations that UNRWA USA furnished aid to UNRWA with the intent of facilitating Hamas' terrorist operations. Plaintiffs have abandoned their conclusory allegations that anti-Israel or pro-Hamas biases "pervade" UNRWA USA staff, Am. Compl. ¶ 415-16; they concede that UNRWA USA paused its donations after UNRWA staff were accused of participating in the October 7 attacks, *id.* ¶ 412; and they outright ignore UNRWA USA's public statements condemning the attacks and calling on all perpetrators to be held to account. Plaintiffs argue that some undefined subset of teachers in UNRWA schools encouraged terrorism, but they do not allege that either UNRWA or UNRWA USA supported or condoned that message. Opp. at 33. They seize on an UNRWA official's call

18

for a "spirit of partnership" in a meeting with the FTOs that governed the territory in which UNRWA operates. *See* Am. Compl. ¶ 267. But, for reasons already explained, that language does not bear the meaning Plaintiffs give to it. And, in any event, *UNRWA USA* is not alleged to have made any such remarks.

"[D]uration of the assistance given." This factor is irrelevant to the analysis because Plaintiffs have not alleged any assistance to Hamas or any of its operations. *See Siegel*, 933 F.3d at 225 (25-year banking relationship did not support aiding-and-abetting liability where complaint failed to allege assistance to FTO's terrorist operations).

## III.    PLAINTIFFS FAIL TO STATE AN ATA CONSPIRACY CLAIM

Unable to defend the conspiracy claim as pled, Plaintiffs concoct a new one. The Amended Complaint alleged—albeit in a conclusory fashion—that UNRWA USA, UNRWA, and Hamas's "common objectives" were (i) employing FTO members, (ii) building schools that stored FTO weapons, and (iii) developing antisemitic curriculum, and that the October 7 attacks were a "direct," "proximate," and "foreseeable" consequence of funding those objectives. Am. Compl. ¶¶ 447-48. That theory fails for all the reasons set forth in the motion to dismiss. MTD at 38-40.

In opposition, Plaintiffs shift gears and argue that UNRWA USA, UNRWA, and Hamas's "convergent objective[s]" were "keeping Palestinians marginalized," "encouraging them to threaten Israel's existence," and "preserving and advancing generational territorial claims" against Israel. Opp. at 36-39. In this new telling, October 7 was not a foreseeable consequence of the conspiracy, but an "overt act" in furtherance of these objectives. This newfangled theory fares no better than the original one.

To start, UNRWA USA, UNRWA, and Hamas are not alleged to have shared any of these three objectives. Plaintiffs do not allege that *any* of the parties to the supposed conspiracy sought to keep Palestinians "marginalized"; that UNRWA USA or UNRWA "encouraged" anyone to

19

"threaten Israel's existence"; or that UNRWA USA sought to preserve territorial claims rather than provide humanitarian services to Palestinians under UNRWA's remit. More importantly, a conspiracy claim requires that "each conspirator had the specific intent to further the common *unlawful* objective." *Bernhardt*, 47 F.4th at 873 (emphasis added). But, as Plaintiffs acknowledge, UNRWA's role in "preserving and advancing" Palestinian refugees' claims (which Plaintiffs assert in conclusory fashion kept Palestinians marginalized and created a threat to Israel's existence) is a function of its internationally-assigned mandate. Plaintiffs do not, and cannot, allege that UNRWA's mission is "unlawful."

Plaintiffs' conspiracy claim fails for a separate reason: the Amended Complaint does not plead any facts supporting the inference that UNRWA USA reached any agreement with Hamas. Plaintiffs describe two, discrete relationships—one between UNRWA USA and UNRWA, and a separate one between UNRWA and the FTOs that govern the territory in which UNRWA operates. Opp. at 35. They never bridge the gap between the two. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556-57 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice."). Plaintiffs argue that an agreement may be "'tacit,'" and that an agreement may be inferred where two parties "work closely together" "over a longer period." Opp. at 35 (quoting *Halbsertam*, 705 F.2d at 481). "That is an accurate statement of the law, but inapt where, as here, Plaintiffs have not alleged that two members of the alleged conspiracy—UNRWA USA and Hamas—ever interacted." *Lavi*, 2025 U.S. Dist. LEXIS 153757, at *23-24.[10]

Nor is this case anything like *Finan*. The *Finan* plaintiffs alleged the existence of an agreement (a "revenue-sharing" arrangement whereby defendants would pay bribes to ISIS and

---

[10] Plaintiffs also cite *Halberstam* for the proposition that a "Defendant need not 'directly interact with the terrorist attacker' to be liable as a co-conspirator." Opp. at 35. Neither that language nor proposition appears in *Halberstam*.

ANF) to further a common, unlawful objective (keeping ISIS in power and "maintain[ing] an ISIS protection racket in the region"). 2025 U.S. Dist. LEXIS 172784, at *84-85, 88-89. And those allegations were bolstered by the fact that the defendants had already been *convicted* of conspiring to provide material support and resources to ISIS and ANF. *Id*. at *39, 85-86.

Plaintiffs' claim that UNRWA USA's continued support for UNRWA after Israel accused the latter's staff of participating in the October 7 attacks shows that the attacks were "within the scope of the conspiracy." Opp. at 39. That is absurd on several levels. It ignores the fact that UNRWA USA condemned the attacks and paused funding while two investigations ran their course, that UNRWA immediately fired the staff accused of participating in the attacks, and that virtually every U.S. ally continued to support UNRWA after Israel's accusations. It also ignores the obvious alternative explanation for continued aid: supporting UNRWA's vital humanitarian work in the midst of an ongoing humanitarian crisis. MTD at 39.

## IV.    PLAINTIFFS FAIL TO STATE A DIRECT ATA LIABILITY CLAIM

Plaintiffs' direct liability claim is easily dispensed with. None of the cases they cite in opposition support their claim that a financial contribution to UNRWA constitutes an act that is "violent" or "dangerous to human life." MTD at 40. Two of the cases they cite—*Boim*, 549 F.3d 685 and *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 43 (D.D.C. 2010), involved direct financial support to a terrorist organization and are thus inapposite. The third, *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018), held that a bank's material support to Hamas, in violation of 18 U.S.C. § 2339B, was *insufficient* to prove that the bank committed an "act of international terrorism." *Id*. at 325.

Plaintiffs' claim separately fails because they do not allege that UNRWA USA's financial contributions constituted a "criminal violation," as required by 18 U.S.C. § 2331(1)(A). Plaintiffs answer this objection by simply bullet-pointing three criminal statutes: 18 U.S.C. §§ 2339A,

21

2339B, and 2339C. Two of these—§§ 2339B and 2339C—are unpled. All three require, at a minimum, actual provision of material support to an FTO, which Plaintiffs do not plausibly allege.[11] And Plaintiffs' §§ 2339A and 2339C claims fail for an additional reason: both require knowledge or intent that the defendant's aid would be used to carry out a terrorist attack, which the Amended Complaint does not plead. MTD at 41.

Plaintiffs' claim likewise fails to satisfy 18 U.S.C. § 2331(1)(B)'s objective intent requirement. Plaintiffs rely exclusively on the fact that UNRWA USA continued to fund UNRWA after it emerged that some of the latter's staff allegedly participated in the October 7 attacks. Opp. at 41. But, again, they concede that UNRWA USA halted donations while UNRWA was under investigation, that every major ally had resumed UNRWA funding by summer of 2024, and that the Biden Administration officials publicly stressed the importance of funding UNRWA's humanitarian operations during the Gaza war. MTD at 9 n.11 & 37. UNRWA USA was therefore marching in lockstep with the international community and acting in accordance with the Biden Administration's stated objectives. Given that context, no "objective observer" would conclude that UNRWA USA sustained its funding to intimidate or coerce a civilian population or government.

Finally, for reasons already explained, Plaintiffs fail to allege that UNRWA USA's donations played any role in, let alone proximately caused, the attacks. *See supra*.

## V.    PLAINTIFFS FAIL TO STATE AN IIED OR NIED CLAIM

Plaintiffs' failure to plead proximate causation dooms both their IIED and NIED claims. Plaintiffs' IIED claim must be dismissed for additional reasons, including their failure to plead

---

[11] Plaintiffs cite *Estate of Henkin*, 495 F. Supp. 3d at 155, in connection with their wholly undeveloped assertion that UNRWA USA violated § 2339B. Opp. at 41. But *Henkin* neither involved an ATA directly liability claim nor referenced § 2339B.

that UNRWA USA engaged in "extreme and outrageous" conduct or that it acted intentionally or recklessly. Plaintiffs' response to the former—that acts of international terrorism are extreme and outrageous—is irrelevant since UNRWA USA is not alleged to have committed any such acts. Their response to the latter—that intent can be inferred from the "nature of the conduct"—likewise fails, since UNRWA USA is merely alleged to have furnished funds, along with dozens of countries and other donors, to a UN agency entrusted with providing humanitarian relief.

Plaintiffs' NIED claims fails for two additional reasons. First, rather than argue that UNRWA USA created the "zone of danger" that led to Plaintiffs' injuries, Plaintiffs claim that UNRWA USA "breached its duty to exercise independent judgment and appropriate diligence in directing funds." Opp. at 43-44. But to bring an NIED claim predicated on a duty-of-care breach, a plaintiff must first allege a "special relationship" between the defendant and plaintiff such that the defendant had "an obligation to care for the plaintiff's emotional well-being or the plaintiff's emotional well-being is necessarily implicated by the nature of the defendant's undertaking to or relationship with the plaintiff.'" *Redshift v. Shaw*, 2018 D.C. Super. LEXIS 102, at *9 (D.C. 2018) (quoting *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 796 (D.C. 2011)). Plaintiffs do not allege any such relationship, let alone allege a breach of any such duty of care. Second, Hamas's terrorist attacks are a textbook example of an intervening cause that defeats an NIED claim. Plaintiffs' only answer—that those attacks were a "highly foreseeable" consequence of UNRWA USA's aid—fails for reasons explained above.

## VI.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR LEAVE TO AMEND

In addition to the reasons set forth in the motion to dismiss, MTD at 44, Plaintiffs' request to file yet another amended complaint should be denied on procedural grounds. "[A]n opposition brief is not the proper place to request leave to amend a complaint." *Strum v. Mardam-Bey*, 2025

U.S. Dist. LEXIS 19759, at *37 (D.D.C. Feb. 4, 2025). Instead, such a request must be made in a written motion that "state[s] with particularity the grounds for seeking" amendment, *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1287 (D.C. Cir. 2019), and includes "'an original of the proposed pleading as amended." *Van der Werf v. Nat'l Park Serv.,* 2025 WL 579704, at *3 n.2 (D.D.C. Feb. 21, 2025) (quoting D.D.C. Local Civ. R. 7(i)). Courts routinely deny requests to file amended complaints where the plaintiff "fail[s] to comply with these basic requirements." *Goziker v. United States DOJ*, 2025 U.S. Dist. LEXIS 150401, at *12 (D.D.C. Aug. 5, 2025); *Klayman v. Fitton*, 2021 U.S. Dist. LEXIS 188119, at *10 (D.D.C. Sept. 30, 2021). The Court should do so here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated: April 24, 2026

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ Joseph Pace
J. PACE LAW, PLLC
30 Wall St, 8th Floor
New York, NY 10005
(917) 336-3948
jpace@jpacelaw.com

Maria LaHood
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6430
mlahood@ccrjustice.org

</div>

24