**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ESTATE OF SIVAN SHA'ARABANY, et al. | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. 1:25-cv-02490-RCL |
| v. | : | |
| | : | **Oral Argument Requested** |
| UNITED NATIONS RELIEF AND WORKS | : | |
| AGENCY FOR PALESTINE REFUGEES IN | : | |
| THE NEAR EAST (UNRWA), et al. | : | |
| | : | |
| Defendants. | : | |
| ……………………………………………………: | | |

**PLAINTIFFS' RESPONSE TO DEFENDANT UNRWA'S OPPOSITION TO THE
STATEMENT OF INTEREST OF THE UNITED STATES**

Dated:  May 20, 2026

Respectfully Submitted,

HEIDEMAN NUDELMAN & KALIK P.C.

By:   */s/ Joseph H. Tipograph*
　　　Richard D. Heideman (No. 377462)
　　　Noel J. Nudelman (No. 449969)
　　　Tracy Reichman Kalik (No. 462055)
　　　Joseph H. Tipograph (No.997533)
　　　HEIDEMAN NUDELMAN & KALIK, PC
　　　5335 Wisconsin Avenue, NW; Suite 440
　　　Washington, DC  20015
　　　Telephone: 202.463.1818
　　　Facsimile: 202.463.2999

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................... ii

TABLE OF AUTHORITIES.............................................................................................................. iii

ARGUMENT .....................................................................................................................................1

    I.    The Executive Branch's Determination that UNRWA is Not Entitled to Immunity is Constitutionally Committed and Is Entitled to Great Weight .......................................................3

        A.    Determinations Concerning International Recognition and Status Are Constitutionally Committed to the Executive Branch.........................................................................................3

        B.    The Government's Present Interpretation is Entitled to Great Weight ...........................5

        C.    Plaintiffs and the Government Agree on the Dispositive Question ................................6

    II.    The Non-Binding International Instruments Cannot Override the Constitutional Roles of the Political Branches ...................................................................................................................7

        A.    General Assembly Resolutions Do Not Create Binding Domestic Law .........................9

        B.    Article 22 Does Not Authorize the General Assembly to Create Domestically Immune Entities.................................................................................................................................9

        C.    ICJ Advisory Proceedings Do Not Control Domestic Immunity Determinations ........11

    III.    The Government's Interpretation Is Confirmed by CPIUN's Text, Structure and Historical Implementation .........................................................................................................12

        A.    Text, Structure and Purpose of the Treaty...................................................................13

        B.    UNRWA's Creation and Subsequent State Practice Illustrate that the CPIUN Was Not Understood to Establish Immunity ...............................................................................14

        C.    The Government's Interpretation Harmonizes the CPIUN and IOIA ...........................17

    IV.    UNRWA's Case Law Does Not Establish Its Entitlement to Immunity........................18

        A.    *Siman Tov* Is Wrongly Decided and Non-Binding.........................................................19

        B.    Entities Afforded Immunity in Other Cases are Materially Distinct from UNRWA....21

        C.    UNRWA's Operational Structure Falls Outside the Framework Contemplated by the Charter .............................................................................................................................23

CONCLUSION .................................................................................................................................24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott v. Abbott,*
  560 U.S. 1 (2010) ...................................................................................5, 12
*Adams Challenge (UK) Ltd. v. Comm'r,*
  156 T.C. 16 (2021) ........................................................................................17
*AFL-CIO v. Chao,*
  409 F.3d 377 (D.C. Cir. 2005) .......................................................................10
*Al-Bihani v. Obama,*
  619 F.3d 1 (D.C. Cir. 2010) ..........................................................................12
*Brzak v. UN,*
  597 F.3d 107 (2d Cir. 2010)......................................................................1, 7
*Diggs v. Richardson,*
  555 F.2d 848 (D.C. Cir. 1976) .........................................................................9
*El Omari v. Int'l Crim. Police Org. (Interpol)*
  35 F.4th 83 (2d Cir. 2022).................................................................................9
*Estate of Siman Tov v. UNRWA,*
  2025 WL 2793701 (S.D.N.Y. Sept. 30, 2025).............................................. 2, 19-21
*Exxon Mobil Corp. v. Corp. Cimex, S.A.*
  111 F.4th 12 (D.C. Cir. 2024) ......................................................................11, 12
*Flores v. S. Peru Copper Corp.,*
  414 F.3d 233 (2d Cir. 2003)...............................................................................9
*Georges v. United Nations,*
  84 F. Supp. 3d 246 (S.D.N.Y. 2015).................................................................22
*Georges v. United Nations,*
  834 F.3d 88 (2d Cir. 2016)...............................................................................21
*Hunter v. United Nations,*
  6 Misc. 3d 1008(A), 800 N.Y.S.2d 347 (N.Y. Sup. Ct. 2004)...........................22, 23
*Jam v. Int'l Fin. Corp.,*
  586 U.S. 199 (2019) .....................................................................................8, 13
*Johnson v. United States,*
  398 A.2d 354 (D.C. 1979)................................................................................10
*Kolovrat v. Oregon,*
  366 U.S. 187 (1961) .........................................................................................1
*Lempert v. Rice,*
  956 F. Supp. 2d 17 (D.D.C. 2013) ...............................................................22, 23
*Medellín v. Texas,*
  552 U.S. 491 (2008) .............................................................................. passim
*Morrison v. U.S. Dep't of Lab.,*
  713 F. Supp. 664 (S.D.N.Y. 1989)......................................................................6
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ...........................................................................................6

*Rodriguez v. Pan Am. Health Org.*,
   502 F. Supp. 3d 200 (D.D.C. 2020) ......................................................................................8, 9
*Russello v. United States*,
   464 U.S. 16 (1983) ...............................................................................................................10
*Sadikoglu v. U.N. Dev. Programme*,
   2011 WL 4953994 (S.D.N.Y. 2011) .....................................................................................23
*Sumitomo Shoji Am., Inc. v. Avagliano*,
   457 U.S. 176 (1982) ...................................................................................................... passim
*United States v. Curtiss-Wright Export Corp.*,
   299 U.S. 304 (1936) .................................................................................................................4
*United States v. Stuart*,
   489 U.S. 353 (1989) ..................................................................................................... 12-14, 16
*Whitney v. Robertson*,
   124 U.S. 190 (1888) ...............................................................................................................17
*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) .................................................................................................................4
*Zivotofsky ex rel. Zivotofsky v. Kerry*,
   576 U.S. 1 (2015) ........................................................................................................... 1, 3-6

**Statutes**

22 U.S.C. § 262 .............................................................................................................................1
Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 7048(c)–(d), 136 Stat. 4459,
   5070–71 (2022) ......................................................................................................................5

**Other Authorities**

A.N. Vorkink & M.C. Hakuta, *Lawsuits Against International Organizations: Cases in National
   Courts Involving Staff and Employment* (World Bank Legal Dep't Working Paper, July 1,
   1985). ...............................................................................................................................14, 15
Agreement Between Egypt & UNRWA (Sept. 12, 1950) ............................................................16
Agreement Between Jordan & UNRWA (Mar. 14, 1951) ...........................................................16
*Annual Rep. of the Dir. of the U.N. Relief & Works Agency for Palestine Refugees in the Near
   East*, 12 U.N. GAOR Supp. No. 14, U.N. Doc. A/3686 (1957). ..............................................14
*Annual Rep. of the Dir. of the U.N. Relief & Works Agency for Palestine Refugees in the Near
   East*, 13 U.N. GAOR Supp. No. 14, U.N. Doc. A/3931 (1958) ..............................................14
*Annual Rep. of the Dir. of the U.N. Relief & Works Agency for Palestine Refugees in the Near
   East*, 14 U.N. GAOR Supp. No. 14, U.N. Doc. A/4213 (1959). ..............................................15
Comay–Michelmore Exchange, U.N. Juridical Y.B. 1968, U.N. Sales No. E.70.V.4..................16
Convention on the Privileges and Immunities of the United Nations,
   21 U.S.T. 1418 (Feb. 13, 1946)...................................................................................... passim
Exchange of Notes Constituting an Overall Agreement Between Lebanon & UNRWA
   (Nov. 26, 1954) ......................................................................................................................16
G.A. Res. 302 (IV), ¶ 17, U.N. Doc. A/RES/302(IV) (Dec. 8, 1949) .......................................16

Holder, International Organizations: Accountability and Responsibility,
    97 ASIL Proc. 231 (2003) .................................................................................................10
S. Exec. Rep. No. 91-17 (1970) .............................................................................................7, 17
S.C. Res. 1542, U.N. Doc. S/RES/1542 (Apr. 30, 2004) ......................................................21, 22
U.N. Charter ........................................................................................................................ passim

**ARGUMENT**

The Plaintiffs submit this memorandum in response to the United States' Statement of Interest, which concludes that Defendant UNRWA is not entitled to immunity under either the CPIUN or the IOIA. UNRWA argues that the Government's position is entitled to no deference, even though nearly all of the cases upon which it principally relies—consistent with well settled law— recognize that the Executive Branch's interpretation of treaties is entitled to great weight. *See e.g., Brzak v. UN*, 597 F.3d 107, 112 (2d Cir. 2010); *Kolovrat v. Oregon*, 366 U.S. 187, 195 (1961).

In fact, what UNRWA itself seeks is not "no deference," bur rather selective deference: acceptance of those portions of the Executive Branch's interpretation that sustain its immunity theory, while disregarding the Executive Branch's ultimate determination that UNRWA is not recognized as a constituent part of the United Nations entitled to immunity. But under U.S. law, determinations concerning foreign recognition and international status are not ordinary interpretive judgments entitled merely to persuasive weight. They are constitutionally committed to the political branches, with the President possessing exclusive authority over formal recognition determinations. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 11–32 (2015).

The defect in UNRWA's position is even more fundamental. With respect to non-sovereign international entities, Congress historically withheld authority for Executive recognition or participation absent affirmative statutory authorization. *See* 22 U.S.C. § 262 (1913). Although Congress later authorized participation in specified international organizations through carefully delineated statutes and treaties, it never extended such authorization to UNRWA. Indeed, both political branches have effectively rejected the very status UNRWA now asks this Court to confer: recognition as a United Nations organ entitled to immunity under U.S. law.

1

Unable to ground its immunity claim in the constitutional or statutory framework of the United States, UNRWA instead invokes the work product of United Nations organs—principally General Assembly resolutions and ICJ advisory opinions—as though they could independently bind United States courts. That position not only conflicts with controlling United States law, which affords at most, limited persuasive weight to the characterizations of foreign non-sovereign bodies, but also finds no support in the text, structure and purpose of the treaties upon which UNRWA relies—the U.N. Charter and the CPIUN—and is affirmatively contradicted by the historical implementation of those instruments with respect to UNRWA.

Stripped of the non-binding international materials upon which UNRWA relies, the weakness of its position becomes evident in the reasoning of *Estate of Siman Tov v. UNRWA*. 2025 WL 2793701 (S.D.N.Y. Sept. 30, 2025). Critically, the Executive Branch did not dispute the general proposition that the CPIUN may extend immunity to recognized United Nations subsidiary organs. Rather, the Government's position was that UNRWA itself does not possess that status under United States law. But having rejecting the Government's interpretation, *Siman Tov* was unable to identify any clear textual basis in the CPIUN itself for extending immunity to UNRWA and therefore resorted to reconstructing treaty provisions protecting state representatives into implied grants of entity-level immunity for purported "subsidiary organs," followed by the same mistaken elevation of non-binding international materials over the constitutional roles of the political branches that UNRWA now asks this Court to replicate.

UNRWA thus asks this Court to apply deference selectively and backwards: to rely upon the Executive Branch's interpretation to argue that the CPIUN may extend beyond the United Nations itself, but to disregard the Executive's determination on the very question as to which its constitutional authority is at its apex—whether the United States recognizes UNRWA as a

2

constituent part of the U.N. that is entitled to immunity. This Court should reject that invitation and accord substantial weight to the Executive Branch's considered determination that UNRWA is not a United Nations subsidiary organ entitled to immunity in United States courts.

**I.      The Executive Branch's Determination that UNRWA is Not Entitled to Immunity is Constitutionally Committed and Is Entitled to Great Weight**

Plaintiffs and the United States agree on the dispositive question before the Court: UNRWA is not entitled to immunity under either the CPIUN or the IOIA. ECF No. 29 at 12, 24; ECF No. 46 at 10, 16, 20. The Government's determination is entitled to substantial weight. This case implicates questions of international recognition and organizational status constitutionally committed to the political branches. The Executive Branch's present interpretation is neither controlled nor diminished by assumptions asserted by prior administrations in different contexts, and this Court should defer to the Government's current determination that UNRWA is not entitled to immunity under United States law.

**A. Determinations Concerning International Recognition and Status Are Constitutionally Committed to the Executive Branch**

This case implicates far more than ordinary treaty interpretation. At its core lies a threshold question of international recognition and status: whether the United States recognizes UNRWA as a constituent part of the United Nations entitled to invoke immunity in United States courts. Under settled constitutional principles, such determinations are not delegated to international bodies or the Judiciary, but to the political branches of the United States Government, and in particular the Executive Branch.

In *Zivotofsky*, the Supreme Court reaffirmed that the President possesses exclusive constitutional authority over formal recognition determinations because the Nation must "speak . . . with one voice" in matters concerning foreign sovereign status and legitimacy. 576 U.S. at 14,

3

32 (quoting *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 319 (1936)). Recognition, the Court explained, is not merely a matter of diplomatic etiquette or interpretive preference; it is a constitutional function allocating authority over "the formal acknowledgment of a foreign sovereign." *Id*. at 11. Accordingly, courts may not substitute their own judgment for that of the political branches on questions concerning the international status of foreign entities.

That principle necessarily extends beyond disputes involving sovereign states, and applies equally, if not more forcefully, to non-sovereign foreign entities such as UNRWA. There is no discernable basis for granting a global political body such as the United Nations General Assembly unilateral authority to dictate the scope or legal incidents of recognition by the United States where foreign sovereigns themselves lack such power. If, for example, the United Nations were to declare Jerusalem part of Israel—or conversely deny that status—the legal effect of such pronouncements within the United States would remain solely a matter for determination by the political branches of the United States Government. The same is true here. The United Nations may characterize UNRWA however it chooses, but whether the United States recognizes UNRWA as a constituent organ entitled to immunity in domestic courts is a question committed to the constitutional authority of the political branches of the United States, not the unilateral assertions of an interested international body.

Moreover, the constitutional considerations identified in *Zivotofsky* carry even greater force here. In *Zivotofsky*, the Executive's recognition determination prevailed despite conflicting with an express statutory enactment and therefore operated at what Justice Jackson described as the President's "lowest ebb." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637–38 (1952) (Jackson, J., concurring). Here, by contrast, the Executive Branch's determination aligns with Congress's longstanding statutory treatment of international organizations and immunities.

4

Congress has never affirmatively designated UNRWA as an entity entitled to immunity under United States law, nor authorized its treatment as a constituent organ of the United Nations for purposes of the CPIUN or the IOIA. To the contrary, Congress prohibits U.S. participation in international organizations absent authorization, it limits the IOIA's reach to organizations in which the United States can and does participate, and in the same legislation through which it extended such treatment to the multilateral UNHRC, it expressly withheld such treatment to the non-multilateral UNRWA. *See* ECF No. 29 at 13-21; *see also e.g.,* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 7048(c)–(d), 136 Stat. 4459, 5070–71 (2022)

Thus, this case presents no conflict between the political branches. Rather, the Executive's determination reflects the constitutional and statutory allocation of authority governing recognition and international status that *Zivotofsky* held the Judiciary must respect. 576 U.S. at 14, 32

**B.  The Government's Present Interpretation is Entitled to Great Weight**

UNRWA argues that the Government's present position is entitled to diminished weight because prior administrations, in different contexts, at times referred to UNRWA as a subsidiary organ or supported immunity claims involving United Nations-affiliated entities. ECF No. 49 at 20–22. But prior Executive assumptions or litigation positions regarding UNRWA's status neither bind the Executive Branch's current interpretation of the CPIUN and U.N. Charter nor diminish its constitutional authority to determine the position of the United States concerning the recognition and legal status of international entities.

It is well settled that the Executive Branch's interpretation of treaties is entitled to "great weight." *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184 n.10 (1982); *Abbott v. Abbott*, 560 U.S. 1, 15 (2010). That principle does not depend upon absolute consistency across administrations or litigation positions. The Executive Branch necessarily retains authority to reassess prior interpretations asserted by earlier administrations in light of renewed legal analysis,

5

changed circumstances, or revised understandings concerning the interests and legal position of the United States. *See Morrison v. U.S. Dep't of Lab.*, 713 F. Supp. 664, 669 (S.D.N.Y. 1989) ("a change in administration brought about by the people casting their votes is a perfectly reasonable basis" for revisiting prior legal interpretations); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring) ("A change in administration . . . is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations.").

That principle carries particular force here because the Government's present position concerns the recognition and legal status of an international entity under United States law—a subject constitutionally committed to the political branches and, in particular, the Executive. Prior administrations could no more permanently bind the United States to recognition-related assumptions concerning UNRWA than they could irrevocably determine the sovereign status of a foreign state for all future administrations. Under *Zivotofsky*, the relevant inquiry is the present position of the political branches of the United States, not historical assumptions asserted in prior litigation. 576 U.S. at 14, 32.

The relevant question therefore is not whether prior administrations may at times have assumed or asserted that UNRWA enjoyed immunity, but whether the Government's current determination—that UNRWA is not recognized as a United Nations organ entitled to immunity under the CPIUN or IOIA—is consistent with the governing treaties, statutes, and constitutional allocation of authority. As explained below, it is. *See infra* at 12-18.

### C. Plaintiffs and the Government Agree on the Dispositive Question

Because the CPIUN confers immunity only upon the specifically named entity of the "United Nations," it would be entirely consistent with the treaty's text for the Government to conclude that immunity extends only to the legal entity known as the United Nations itself—the entity that has

6

repeatedly appeared and been sued in that capacity in United States courts. *See Brzak v. United Nations*, 597 F.3d 107, 109–10 (2d Cir. 2010). The Government, however, interprets the CPIUN more broadly, concluding that certain United Nations organs may fall within the treaty's immunity framework while making clear that UNRWA does not. ECF No. 46 at 8, 20.

UNRWA attempts to portray Plaintiffs and the Government as advancing incompatible positions. They are not. Both agree on the dispositive principle: the CPIUN does not automatically immunize every entity the General Assembly may create from time to time or may subsequently characterize as a "subsidiary organ." ECF No. 29 at 8; ECF No. 46 at 8. Rather, the relevant inquiry is whether the entity at issue falls within the treaty's immunity framework as properly interpreted under domestic law. ECF No. 29 at 11; ECF No. 46 at 10-14. The United States has now definitively answered that question here in the negative, and the Court should do likewise.

Nor is there any inconsistency between Plaintiffs' IOIA arguments and the Government's CPIUN interpretation because, as explained below, both preserve the ratification-era understanding that the CPIUN did not materially expand organizational immunity beyond existing domestic-law frameworks. *See* S. Exec. Rep. No. 91-17, at 5–6, 11, 37 (1970); ECF No. 29 at 25; ECF No. 46 at 14. That principle forecloses treating General Assembly designation alone as binding—or even sufficient—to compel the conferral of immunity in United States courts.

## II.    The Non-Binding International Instruments Cannot Override the Constitutional Roles of the Political Branches

UNRWA's immunity theory depends on the proposition that General Assembly resolutions, institutional practice, and ICJ advisory materials may conclusively determine immunity in United States courts independent of—and even contrary to the positions taken by—the political branches of the United States Government. Its Response to the Government's Statement repeatedly asserts that the General Assembly's establishment of UNRWA as a "subsidiary organ" is itself dispositive

and beyond reconsideration by domestic courts, arguing that "by establishing a subsidiary organ via resolution, the General Assembly conclusively 'deems' that the organ is necessary for its functions." ECF No. 49 at 10.  UNRWA further contends that "[n]othing in the UN Charter or the CPIUN grants domestic courts of one Member State any authority to override the multilateral General Assembly's determination, let alone purport to unilaterally alter the legal status of a subsidiary organ or deny it immunity under the CPIUN." *Id*. Likewise, UNRWA posits that "the General Assembly alone has broad discretion" to determine subsidiary-organ status and repeatedly treats General Assembly resolutions as effectively determinative of immunity questions under domestic law. *Id*. at 9-10, 13, 19–20.

UNRWA similarly elevates ICJ advisory opinions into authoritative domestic-law sources, asserting that the ICJ "has repeatedly confirmed" both the General Assembly's authority to create operational subsidiary organs and that "UNRWA is entitled to immunity under the CPIUN," while further insisting that ICJ opinions are "accorded great weight" because the ICJ is "responsible for settling disputed interpretations of the CPIUN." *Id.* at 14-15. In short, UNRWA's theory rests on the premise that international bodies may conclusively define both UNRWA's institutional status and the domestic legal consequences flowing from that status, irrespective of the constitutional allocation of authority within the United States.

That premise is mistaken. The extension of immunity in United States courts depends on domestic law: applicable self-executing treaty text, implementing statutes, and the Executive Branch's present interpretation, which is entitled to substantial weight. *See Medellín v. Texas*, 552 U.S. 491, 504–06 (2008); *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 204–05 (2019); *Sumitomo*, 457 U.S. at 184–85 & n.10. The Charter does not itself create enforceable domestic immunity law, and neither General Assembly resolutions nor ICJ advisory opinions bind domestic courts. *Rodriguez*

8

*v. Pan Am. Health Org.*, 502 F. Supp. 3d 200, 223–24 (D.D.C. 2020); *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 261 (2d Cir. 2003); *Medellín*, 552 U.S. at 509–10.

### A. General Assembly Resolutions Do Not Create Binding Domestic Law

The U.N. Charter does not authorize the General Assembly to create binding domestic immunity rights by resolution. The General Assembly's powers are overwhelmingly deliberative and recommendatory. U.N. Charter arts. 10–15. Article 18 identifies certain "important questions" requiring a two-thirds vote, yet even there the Charter nowhere suggests that the General Assembly may impose binding domestic legal obligations concerning immunity. U.N. Charter art. 18.

Where the Charter intends U.N. action to carry binding legal force, it says so expressly. Article 25 provides that Members "agree to accept and carry out the decisions of the *Security Council*." U.N. Charter art. 25 (emphasis added). The Charter contains no comparable language with respect to General Assembly resolutions. And even Security Council resolutions do not automatically become enforceable domestic law absent implementation through domestic legal mechanisms. *Diggs v. Richardson,* 555 F.2d 848, 851–52 (D.C. Cir. 1976). UNRWA therefore cannot establish immunity in United States courts merely by pointing to General Assembly resolutions characterizing it as a "subsidiary organ." *Flores*, 414 F.3d at 261.

### B. Article 22 Does Not Authorize the General Assembly to Create Domestically Immune Entities

UNRWA's theory fundamentally conflates multilateral governance with domestic lawmaking authority. The multilateral character of the General Assembly is precisely what qualifies the General Assembly *itself* as an international organization to be entitled to recognition and immunity under domestic law. *See El Omari v. Int'l Crim. Police Org. (Interpol)*, 35 F.4th 83, 87–89 (2d Cir. 2022). It does not follow that the General Assembly may unilaterally bind United States courts or automatically confer immunity upon operational entities such as UNRWA, which notably lacks

the multilateral governance structures ordinarily associated with international organizational legitimacy and accountability, specifically as contemplated in the absence of judicial review. *See* William E. Holder, International Organizations: Accountability and Responsibility, 97 ASIL Proc. 231, 232–36 (2003).

UNRWA's theory depends on treating Article 22 as granting the General Assembly effectively unreviewable authority because it permits creation of subsidiary organs "as it deems necessary." U.N. Charter art. 22. But discretion is not "freed from the restraints of fact and the reasoned dictates of law." *Johnson v. United States*, 398 A.2d 354, 361 (D.C. 1979). Article 22 itself imposes a substantive limitation: subsidiary organs may be established only "for the performance of [the General Assembly's] functions." U.N. Charter art. 22. That limitation cannot simply be read out of the Charter. *See AFL-CIO v. Chao*, 409 F.3d 377, 386–87, 390 (D.C. Cir. 2005).

More fundamentally, Article 22 is not itself an immunity provision. Immunity is addressed separately in Article 105, which provides that "the Organization shall enjoy in the territory of each of its Members such privileges and immunities *as are necessary* for the fulfilment of its purposes." U.N. Charter art. 105 (emphasis added). Unlike Article 22, Article 105 omits the discretionary "as it deems language upon which UNRWA relies. Compare U.N. Charter art. 22, with *id*. art. 105. That omission matters. See *Russello v. United States*, 464 U.S. 16, 23 (1983).

The Charter therefore distinguishes between the General Assembly's authority to create subsidiary organs and the separate legal question of whether the UN's immunity attaches. UNRWA collapses those distinct concepts into one. Under Defendant's theory, the General Assembly could create an entity by resolution, label it a "subsidiary organ," and thereby compel United States courts to recognize immunity to all ends, regardless of purpose, acts, misdeeds, operations or functions, without congressional authorization, Executive recognition, implementing

10

legislation, or satisfaction of the IOIA. Nothing in the Charter, CPIUN, or domestic law supports that transfer of authority.

### C. ICJ Advisory Proceedings Do Not Control Domestic Immunity Determinations

UNRWA's characterization of ICJ advisory opinions as "authoritative" and reliance on dicta arising from their proceedings does not alter the domestic legal analysis before this Court. Section 30 of the CPIUN establishes a mechanism for resolving disputes concerning the interpretation or application of the Convention between the United Nations and member states. It does not incorporate ICJ advisory opinions into domestic law or direct United States courts to treat such opinions as binding rules of decision in private litigation. By definition, ICJ advisory opinions are advisory. They are not binding precedents upon United States courts and do not displace the constitutional allocation of authority governing treaty implementation and immunity determinations under domestic law.

Indeed, even if Section 30 could be construed to give certain ICJ determinations binding force as a matter of international obligation between states, such determinations would still not become judicially enforceable domestic law absent implementation through the political branches. *See Medellín*, 552 U.S. at 509–10. In any event, Section 30 states only that the ICJ's opinion "shall be accepted as decisive *by the parties*," but the United States is not a party to the advisory proceedings upon which UNRWA relies. Convention on the Privileges and Immunities of the United Nations, Art. VIII, sec. 30, Feb. 13, 1946, 21 U.S.T. 1418, 1422 (emphasis added).

Nor do the advisory proceedings cited by UNRWA concern the issue before this Court. They involve disputes between states and components of the United Nations system—not private tort litigation governed by domestic immunity law in United States courts. ECF No. 49 at 15. *Exxon Mobil Corp. v. Corp. Cimex, S.A.* does not suggest otherwise. 111 F.4th 12, 27 (D.C. Cir. 2024).

11

*Exxon* cited ICJ merits decisions only as persuasive evidence concerning the content of customary international law because the statute at issue expressly incorporated "international law" into the governing standard. *Id*. at 27–28. *Exxon* did not elevate ICJ advisory opinions into controlling authority on questions of domestic treaty implementation, immunity, or constitutional allocation of authority.[1]

Under settled United States law, the Executive Branch's present interpretation of treaty obligations and their domestic legal effect is entitled to substantial weight. *See Sumitomo*, 457 U.S. at 184 n.10; *Abbott*, 560 U.S. at 15. ICJ advisory opinions cannot displace the considered determination advanced by the political branches of the United States in this litigation. *See Al-Bihani v. Obama*, 619 F.3d 1, 41 (D.C. Cir. 2010) (Kavanaugh, J., concurring).

### III.    The Government's Interpretation Is Confirmed by CPIUN's Text, Structure and Historical Implementation

In addition to affording "great weight" to the Executive Branch's treaty interpretation, courts examine whether that interpretation accords with the treaty's text, structure and purpose, while also examining ratification history, and subsequent governmental practice where appropriate. *See United States v. Stuart*, 489 U.S. 353, 365–69 (1989); *Sumitomo*, 457 U.S. at 180–85. Every relevant interpretive consideration confirms the Government's conclusion that UNRWA falls outside the immunity framework recognized by the CPIUN and implemented through domestic law.

---

[1] Plaintiffs do not dispute that ICJ decisions may, in appropriate contexts, serve as persuasive factors which may be considered regarding the content of international law. But the advisory proceedings upon which Defendant relies involve the ICJ—itself a principal organ of the United Nations—addressing the status and immunities of entities operating within that *same institutional framework. See* U.N. Charter arts. 7, 92. Whatever persuasive value such materials may carry regarding intra-UN practice, they do not determine the domestic legal effect of immunity claims in United States courts absent incorporation through controlling U.S. law. *See Medellín*, 552 U.S. at 504–06.

### A.  Text, Structure and Purpose of the Treaty

The Government's interpretation is fully consistent with the text, structure, and purpose of both the CPIUN and the UN Charter. *See Stuart*, 489 U.S. at 365–69; *Sumitomo*, 457 U.S. at 180-85.

Defendant asserts in conclusory fashion that the "*plain and unambiguous* text of Article II of the CPIUN grants absolute immunity … to subsidiary organs of the UN, such as UNRWA." ECF No. 49 at 9 (emphasis added). That assertion is objectively incorrect. Article II mentions neither subsidiary organs nor UNRWA. CPIUN art. II, § 2. Immunity must be expressly conferred. *Medellín*, 552 U.S. at 504–06; *Jam*, 586 U.S. at 204–05. Indeed, because the CPIUN nowhere expressly extends immunity to "subsidiary organs," UNRWA is forced to argue that "[n]othing in the text of the CPIUN provides for any inquiry into the functions of the UN['s] subsidiary organs." ECF No. 49 at 3. But that absence of textual limitation does not establish immunity; it underscores that the treaty never expressly conferred immunity upon such entities in the first place.

Nor does the Government's invocation of the UN Charter alter that analysis. The Government explains that the CPIUN effectuates Articles 104 and 105 of the Charter and even accepts UNRWA's premise, interpreting the CPIUN's reference to the "United Nations" to include subsidiary organs as defined by Article 22. ECF No. 46 at 2–3, 8–10. But because UNRWA instead operates a large-scale direct-service apparatus employing tens of thousands of personnel and administering extensive quasi-governmental aid operations, the Government concludes that UNRWA neither performs nor is necessary to perform delegated deliberative functions contemplated by Article 22 and therefore falls outside the category of organs protected by the CPIUN. ECF No. 46 at 7–10.

UNRWA's reliance on *Stuart* is misplaced. ECF No. 46 at 10. *Stuart* did not endorse expansive treaty constructions untethered from text or structure; it deferred to the Government's interpretation because that interpretation remained faithful to the treaty's broader legal framework

13

and purpose. 489 U.S. at 365–69. The same is true here. The Government does not disregard the Charter provisions upon which UNRWA relies; it interprets them completely—where UNRWA interprets them selectively—and within the broader structure and purposes of the Charter itself. In so doing, it concludes that UNRWA falls outside the resulting immunity framework. Because that interpretation remains faithful to the CPIUN and Charter alike, it is entitled to substantial and compelling weight. *Sumitomo*, 457 U.S. at 184 n.10.

### B. UNRWA's Creation and Subsequent State Practice Illustrate that the CPIUN Was Not Understood to Establish Immunity

Egypt acceded to the CPIUN in 1948, yet Egyptian and Gaza (then under Egypt's control) tribunals throughout the 1950s repeatedly entertained suits against UNRWA notwithstanding its assertions of immunity. *See* A.N. Vorkink & M.C. Hakuta, *Lawsuits Against International Organizations: Cases in National Courts Involving Staff and Employment* 11-12, 16-17, 19 (World Bank Legal Dep't Working Paper, July 1, 1985). UNRWA itself reported to the General Assembly that "[i]n none of these court cases has UNRWA's status or jurisdictional immunity been recognized" and that one proceeding had "resulted in a judgment expressly denying this status and immunity." *Annual Rep. of the Dir. of the U.N. Relief & Works Agency for Palestine Refugees in the Near East*, 13 U.N. GAOR Supp. No. 14, at 41, U.N. Doc. A/3931 (1958).

In the underlying Gaza proceeding, the court expressly held "that UNRWA was not an organ of the United Nations; that . . . it did not enjoy jurisdictional immunity; and that, therefore, the court was competent to hear a claim lodged against [UNRWA] by a former staff member." *Annual Rep. of the Dir. of the U.N. Relief & Works Agency for Palestine Refugees in the Near East*, 12 U.N. GAOR Supp. No. 14, at 47 n.34, U.N. Doc. A/3686 (1957). UNRWA itself later reported that Egyptian authorities had continued to deny its asserted status and privileges notwithstanding

14

the CPIUN. *Annual Rep. of the Dir. of the U.N. Relief & Works Agency for Palestine Refugees in the Near East*, 14 U.N. GAOR Supp. No. 14, at 6-7, U.N. Doc. A/4213 (1959).

Syrian practice reflected similar adverse determinations to UNRWA's claimed immunity. Although Syria acceded to the CPIUN in 1953, Syrian tribunals subsequently entertained employment actions against UNRWA, entered judgments against it, and even authorized seizure of UNRWA-held assets. *See* Vorkink & Hakuta, at 16. One proceeding reportedly concluded that UNRWA constituted "a public body of the Republic of Syria." *Id.* Plaintiffs do not suggest that characterization describes UNRWA's legal status. But the episode nevertheless reflects the broader post-ratification uncertainty surrounding whether UNRWA functioned as the "United Nations" itself or instead as a territorially embedded operational body distinct from the deliberative institutional framework contemplated by the Charter.

UNRWA attempts to dismiss the post-ratification disputes concerning its immunity by arguing that host-country courts merely "wrongly decided" cases later clarified through General Assembly action and bilateral agreements. ECF No. 49 at 20 (citing August Reinisch, *Immunity of Property, Funds and Assets* 81–82 (2016)). Yet UNRWA simultaneously acknowledges that such measures were necessary to "confirm[]" UNRWA's status and privileges after national courts questioned its immunity. *Id.* That questioning is precisely why the host-country disputes matter.   Plaintiffs do not invoke them as authoritative judicial determinations of UNRWA's legal status, but as evidence of post-ratification governmental practice demonstrating that states hosting UNRWA's operations did not uniformly apply claimed CPIUN immunity to attach automatically upon General Assembly designation alone, and that UNRWA itself repeatedly relied upon separate host-state agreements, diplomatic intervention and after-the-fact attempted fixes through UN resolutions or other actions

15

to secure or attempt to secure recognition of its claimed privileges and immunities. *See Stuart*, 489 U.S. at 366–69 (considering post-ratification governmental practice in treaty interpretation).

UNRWA wants this court to ignore the precatory language featured at its creation and in subsequent agreements with the host countries. The General Assembly did not "remind," but rather "call[ed] upon" member states to recognize UNRWA's immunity at creation. G.A. Res. 302 (IV), ¶ 17, U.N. Doc. A/RES/302(IV) (Dec. 8, 1949). Egypt and Jordan did not "affirm" but rather "agree[d] to grant" immunity. *See, e.g.*, Agreement Between Egypt & UNRWA art. VII (Sept. 12, 1950); Agreement Between Jordan & UNRWA art. I (Mar. 14, 1951). Lebanon did not "recognize" UNRWA's immunity, it "prepared to give full recognition" to it. Exchange of Notes Constituting an Overall Agreement Between Lebanon & UNRWA ¶ 1 (Nov. 26, 1954). Israel likewise did not recognize that the CPIUN automatically "governed" its relationship with UNRWA, but rather that the CPIUN "shall govern" the relationship as a consequence of the bilateral agreement the parties reached. U.N. Juridical Y.B. 1968, at 40–41, U.N. Sales No. E.70.V.4 (Comay–Michelmore exchange).

Unlike these host-states, however, the United States has entered into no comparable agreement with the U.N. and certainly not with UNRWA. UNRWA's immunity claim here therefore rests entirely on the proposition that General Assembly creation alone necessarily binds United States courts as a matter of domestic law, which it does not. The host country disputes reflect no such post-ratification understanding; they confirm the opposite. Nor can after-the-fact General Assembly resolutions cure the explicit lack of immunity conferred on UNRWA at its creation. That the General Assembly may create entities qualifying as lawful subsidiary organs does not mean it may retroactively confer immunity upon entities that fall outside the Charter's contemplated framework.

16

This post-ratification history is fundamentally inconsistent with UNRWA's present assertion that CPIUN immunity attached automatically and conclusively upon General Assembly designation under Article 22. ECF No. 49 at 9-10. Nothing in the Charter, CPIUN, or IOIA supports the proposition that General Assembly designation alone binds United States courts to confer immunity absent specific domestic implementation or recognition through United States law. Neither exists here.

### C. The Government's Interpretation Harmonizes the CPIUN and IOIA

The Government's interpretation quite appropriately harmonizes the CPIUN and the IOIA. Courts construe statutes and treaties addressing the same subject matter, where possible, "in a way that is consistent with the intent of each and that results in an absence of conflict between the two." *Adams Challenge (UK) Ltd. v. Comm'r*, 156 T.C. 16, 45 (2021); *Whitney v. Robertson*, 124 U.S. 190, 194 (1888).

That harmonizing principle is particularly important here because the understanding conveyed to Congress at ratification was that the CPIUN would not expand organizational immunity beyond existing domestic-law frameworks. *See* S. Exec. Rep. No. 91-17, at 5–6; ECF No. 46 at 13-14. Consistent with that understanding, the Government interprets the CPIUN and Charter framework in a manner compatible with the domestic statutory structure governing organizational immunity, rather than treating General Assembly designation alone as sufficient to create immunity in United States courts. *See* ECF No. 46 at 8-11.

UNRWA's contrary interpretation would create precisely the conflict the canon of harmonious construction seeks to avoid. Under Defendant's theory, the General Assembly could unilaterally create operational entities entitled to immunity in United States courts regardless of whether those entities, established not by the United States or under US law but rather solely established by determination of the United Nations itself, satisfy the domestic-law requirements governing

organizational immunity. ECF No. 49 at 9-10. Neither the CPIUN nor the UN Charter supports that result; and in the instant situation is inconsistent with the principles thereof.

The conflict is particularly acute here because UNRWA does not satisfy the IOIA's participation requirement. As Plaintiffs previously demonstrated, the United States does not participate in UNRWA through the member-state institutional governance structures contemplated by the IOIA and United Nations Participation Act. See ECF No. 29 at 13-22. Unlike deliberative or member-governed UN entities in which the United States participates through representation and voting structures, UNRWA lacks a formal governance framework through which the United States supervises or directs operations. *Id.*; *see also* ECF No. 29-4. Congress itself has recognized that distinction in appropriations legislation distinguishing between United States "participation" in deliberative UN entities and organizations to which the United States contributes, such as through its "contributions" to UNRWA. *See id*. at 17–19.

The Executive Branch's interpretation avoids conflict between the CPIUN and IOIA by recognizing that UNRWA falls outside both immunity frameworks, and that interpretation is therefore entitled to substantial weight. *See Sumitomo*, 457 U.S. at 184 n.10.

## IV.    UNRWA's Case Law Does Not Establish Its Entitlement to Immunity

UNRWA's cited cases do not establish that General Assembly designation alone compels immunity in United States courts. Beyond the wrongly decided Siman Tov decision, those cases uniformly involved entities whose status was uncontested, whose immunity claim was supported by the Executive Branch, and which utilized governance and command structures materially different from UNRWA's. None addressed the question presented here: whether an operational entity lacking member-state governance participation and opposed by the Executive nevertheless acquires immunity solely because the General Assembly labeled it a "subsidiary organ."

18

## A. *Siman Tov* Is Wrongly Decided and Non-Binding

UNRWA's reliance on *Siman Tov* is misplaced. 2025 WL 2793701. The decision is non-binding, presently on appeal before the Second Circuit, and directly contrary to the current position of the United States Government. ECF No. 46 at 19. It has also drawn substantial criticism from former senior United States national-security, diplomatic, and legal officials, including three former United States Attorneys General, a former Director of the National Security Agency and Commander of U.S. Cyber Command, former senior National Security Council and State Department officials, former Treasury and USAID officials, and prominent scholars of constitutional, international, and foreign-relations law. See Brief of Amici Curiae Former National Security and Foreign Policy Officials in Support of Appellants at 1–3, *Siman Tov*, No. 25-2837 (2d Cir. Jan. 29, 2026) ("Former Officials Brief"), attached here as Exhibit 1.

As those former officials explain, *Siman Tov* improperly expanded the CPIUN beyond both its text and the understanding conveyed to the Executive and Senate at ratification. *Id*. at 13-29. Their brief further explains that extending immunity to UNRWA notwithstanding the Executive Branch's present position raises serious separation-of-powers concerns because courts traditionally defer to the political branches on matters implicating foreign affairs, diplomacy, terrorism, and national security. *Id*. at 4–12. The amici accordingly conclude that the district court committed "egregious legal error" in construing the CPIUN to extend immunity to UNRWA. *Id*. at 24.

A central error of the district court was textual. It treated CPIUN Article IV § 11—which grants privileges and immunities to "[r]epresentatives of Members to the principal and subsidiary organs"—as though it silently conferred entity-level immunity upon the organs themselves. CPIUN art. IV, § 11. But Article IV governs privileges afforded to state representatives participating in UN organs, it does not purport to confer institutional immunity upon the organs

19

themselves. As Plaintiffs previously demonstrated, *Siman Tov* reached its conclusion essentially by excising the grammatical subject of the provision ("Representatives of Members") and transforming a clause protecting persons into an unstated grant of immunity to organizations of the U.N., elevating their status beyond that which Congress or the US government intended. ECF No. 29 at 28. The Former Officials Brief similarly criticizes the district court for extending immunity beyond the plain text of the CPIUN and beyond what the ratifying political branches understood the treaty to accomplish. Former Officials Brief at 13–29.

Nor did *Siman Tov* meaningfully address the domestic statutory predicates imposed by the IOIA, including whether UNRWA qualifies as a "public international organization" in which the United States participates. See ECF No. 29 at 13–19. Instead, the court effectively adopted a wrong position, unjustified under applicable law, by presuming that any entity the General Assembly labels a "subsidiary organ" automatically inherits the immunity of the United Nations itself. But neither the CPIUN, the UN Charter, nor the IOIA compels that conclusion. As the amici explain, the CPIUN extends immunity only to "the United Nations," not automatically to every operational body later created by General Assembly resolution. Former Officials Brief at 13–24.

Equally important, the circumstances surrounding *Siman Tov* materially differ from those before this Court. The Executive Branch now expressly rejects the interpretation adopted there and urges reversal on appeal. *See* ECF No. 46 at 19. The present Executive has further determined that UNRWA has been infiltrated by terrorist organizations, suspended United States funding, minimized official contact with UNRWA, and sought its dismantlement. Former Officials Brief at 5–8. The amici therefore explain that judicial extension of absolute immunity to UNRWA despite the contrary position of both political branches would improperly override the foreign-policy and

20

national-security judgments constitutionally committed to the Executive and Congress. *Id*. at 4–12.

Because *Siman Tov* failed to confront those threshold structural and statutory questions, misconstrued the text of the CPIUN, and now stands repudiated by the United States Government and a broad bipartisan group of former senior national-security and foreign-policy officials, this Court should accord the decision neither controlling nor substantial persuasive weight in independently determining whether Congress and the United States intended UNRWA to receive in United States courts, the immunity otherwise accorded to the United Nations itself.

### B. Entities Afforded Immunity in Other Cases are Materially Distinct from UNRWA

None of the comparator cases cited by UNRWA holds that General Assembly designation alone conclusively determines immunity in United States courts. To the contrary, those cases involved entities whose status was effectively uncontested, whose immunity was supported by the Executive Branch, and whose structures bore little resemblance to UNRWA's uniquely autonomous operational model.

MINUSTAH, the entity at issue in *Georges v. United Nations*, was fundamentally different from UNRWA. 834 F.3d 88 (2d Cir. 2016). MINUSTAH was a Security Council-authorized peacekeeping mission established under Chapter VII authority to carry out core Charter functions concerning international peace and security. S.C. Res. 1542, pmbl., ¶¶ 1, 7, U.N. Doc. S/RES/1542 (Apr. 30, 2004). It operated under direct United Nations command authority through the Secretary-General's Special Representative, whose mandate included "overall authority" over the mission's operations. *Id*. ¶ 3. Its personnel were contributed by member states and functioned within formal United Nations command structures, supervised through United Nations organs in which member

21

states, including the United States, directly participated. *Id.* ¶¶ 1, 3-4, 16. In practical terms, MINUSTAH functioned as the U.N. itself carrying out Charter-based peacekeeping operations.

*Georges* therefore did not confront the question presented here: whether a long-term operational entity created by General Assembly resolution, lacking member-state governance participation and lacking Executive support for immunity, automatically constitutes the "United Nations" for purposes of domestic immunity law. Nor did the Second Circuit suggest that every operational body labeled a "subsidiary organ" necessarily receives identical treatment regardless of its structure, governance, or relationship to the Charter framework.

The same is true of the operational programmes cited by UNRWA. Courts have described entities such as UNDP, UNICEF, and related bodies using inconsistent terminology—including "subsidiary program," "subsidiary body," and "agency"—reflecting the absence of any settled constitutional taxonomy within the Charter itself. *See Lempert v. Rice*, 956 F. Supp. 2d 17, 24 (D.D.C. 2013); *Georges v. United Nations*, 84 F. Supp. 3d 246, 248 (S.D.N.Y. 2015); *Hunter v. United Nations*, 6 Misc. 3d 1008(A), 800 N.Y.S.2d 347, at *3 (N.Y. Sup. Ct. 2004). More importantly, those entities (but not UNRWA) operate through formal Executive Boards and continuing member-state oversight structures that provide political accountability, governance participation, and multilateral supervision. *See* Report of the Joint Meeting of the Executive Boards of UNDP/UNFPA/UNOPS, UNICEF, UN-Women and WFP, Report ¶¶ 2, 10, 22 (May 31, 2024).

UNRWA lacks those characteristics. Unlike UNDP, UNICEF, UNHCR, or WFP, UNRWA does not operate through a formal executive board or comparable member-state governance structure through which member states—including the United States—participates institutionally in directing, supervising, or overseeing operations. Nor does it function as a temporary Security Council-directed mission operating under direct U.N. command authority like MINUSTAH.

22

Instead, as the Government explains, UNRWA operates through a largely autonomous long-term operational bureaucracy administering extensive quasi-governmental aid functions through a permanent local workforce. See ECF No. 46 at 7–8, 20.

None of UNRWA's cited cases addressed whether an entity lacking meaningful member-state participation, lacking present Executive support for immunity, and challenged under the IOIA nevertheless qualifies for immunity solely because the General Assembly labeled it a "subsidiary organ." Those cases arose in materially different circumstances—ones in which the Executive supported immunity, the entities' status was largely uncontested, and courts either expressly or implicitly assumed satisfaction of the domestic statutory framework. *See Lempert*, 956 F. Supp. 2d at 24–25; *Sadikoglu v. U.N. Dev. Programme*, 2011 WL 4953994, at *3 (S.D.N.Y. 2011); *Hunter*, 800 N.Y.S.2d 347, at *3. They therefore do not resolve the question before this Court.

### C. UNRWA's Operational Structure Falls Outside the Framework Contemplated by the Charter

The Government correctly recognizes that UNRWA does not resemble the type of "subsidiary organ" contemplated by Article 22. Rather than performing delegated deliberative or coordinative functions of the General Assembly, UNRWA operates as a large-scale autonomous operational body exercising "wide international responsibilities" and providing "public-like basic services" across a limited defined territorial population. ECF No. 46 at 7, 20. The Government accordingly describes UNRWA as "unique amongst UN organisations," possessing a "wide area of autonomy," and being "nothing else like" the entities ordinarily treated as part of the United Nations itself. *Id.*

That distinction matters because the Charter expressly identifies principal organs, subsidiary organs performing delegated functions, and "specialized agencies" established through intergovernmental agreement and brought into relationship with the United Nations. U.N. Charter

23

arts. 7, 22, 57. But it provides no clear constitutional framework for the type of large-scale independently operated entity that is UNRWA.

UNRWA's contrary interpretation produces irrational results. Under its theory, if member states negotiate and adopt a constitutive treaty establishing an operational programme as a specialized agency, the entity would require separate legal recognition and domestic implementation before immunity could attach in United States courts. Yet that same entity created solely by the General Assembly without a treaty—and without member-state governance participation—would automatically receive absolute immunity so long as the Assembly labeled it a "subsidiary organ." Nothing in the Charter, CPIUN, or domestic law supports that inversion.

The absence of a constitutive treaty therefore does not cure the structural defect identified by the Government. UNRWA functions neither as a genuine internal subsidiary organ performing delegated General Assembly functions nor as an operational body subject to meaningful multilateral governance and accountability mechanisms. Instead, it operates as a highly autonomous operational entity fundamentally disconnected from the legal and institutional characteristics traditionally associated with international organizations entitled to immunity in United States courts. That is precisely why the Government, echoing an UNRWA official, correctly concludes that UNRWA is U.N. "in name only." ECF No. 46 at 20.

## CONCLUSION

The foregoing authorities converge on a single conclusion: UNRWA is not the United Nations itself, not a Security Council-directed peacekeeping mission, not a member-state governed operational programme subject to continuing multilateral member-governed oversight, and not a public international organization satisfying the domestic-law predicates for immunity under the IOIA. It is instead a highly autonomous, localized relief-and-works bureaucracy administering localized relief providing services similar to other non-profit associations through structures

24

materially distinct from those through which the United Nations and its genuinely multilateral organs ordinarily function. Nothing in the Charter, the CPIUN, or domestic law compels treating such an entity as inherently immune in United States courts merely because the General Assembly may have labeled it a "subsidiary organ."

The Executive Branch—the branch constitutionally charged with foreign relations and whose treaty interpretations are fully entitled to substantial weight—has concluded that UNRWA does not qualify for immunity under either the CPIUN or the IOIA. See ECF No. 46 at 20.  Because UNRWA identifies no binding source of United States law conferring immunity upon it, the Court should reject UNRWA's claim of immunity and deny its Motion to Dismiss on that ground.

Dated: May 20, 2026                    Respectfully Submitted,

HEIDEMAN NUDELMAN & KALIK P.C.

By:    */s/ Joseph H. Tipograph*
          Richard D. Heideman (No. 377462)
          Noel J. Nudelman (No. 449969)
          Tracy Reichman Kalik (No. 462055)
          Joseph H. Tipograph (No.997533)
          HEIDEMAN NUDELMAN & KALIK, PC
          5335 Wisconsin Avenue, NW; Suite 440
          Washington, DC  20015
          Telephone: 202.463.1818
          Facsimile: 202.463.2999

25